UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EARL HAYES,

                          Petitioner,                        11 Civ. 1365(KMK)(PED)

            - against -                                      **REPORT AND
                                                             RECOMMENDATION**

T. INSERRA,

                          Respondent.

TO:    THE HONORABLE KENNETH M. KARAS
       UNITED STATES DISTRICT JUDGE

## TABLE OF CONTENTS

I.     Introduction.................................................................................................Page 1

II.    Background
       A.     The Arrest.......................................................................................Page 1
       B.     The Indictment And Arraignment.................................................Page 2
       C.     The Pretrial Proceedings................................................................Page 5
       D.     The Guilty Plea...............................................................................Page 8
       E.     The Motion To Withdraw The Guilty Plea....................................Page 9
       F.     The Sentencing...............................................................................Page 10
       G.     The Direct Appeal..........................................................................Page 10
       H.     The State *Habeas Corpus* Petitions
              1.     The Second State *Habeas* Petition.....................................Page 12
              2.     The Third State *Habeas* Petition.........................................Page 12
       I.     The Motions To Vacate The Judgment Of Conviction And Set Aside the Sentence
              1.     The First § 440.10 Motion....................................................Page 13
              2.     The Second § 440.10 Motion.................................................Page 14
              3.     The § 440.20 Motion.............................................................Page 15
              4.     The Third § 440.10 Motion...................................................Page 15
       J.     The Petition For *Error Coram Nobis*............................................Page 16
       K.     Other Federal Civil Actions...........................................................Page 16
       L.     The Federal *Habeas Corpus* Proceeding........................................Page 16

III.   Discussion
       A.     Applicable Law On *Habeas Corpus* Review...................................Page 20
              1.     Timeliness Requirement........................................................Page 20
              2.     Exhaustion Requirement .......................................................Page 22
              3.     Procedural Default.................................................................Page 24

        4.       The AEDPA Standard of Review...........................................Page 25

B.    Application
       1.       Petitioner's Executed Waiver Of His Right To Appeal Is Not An Absolute Bar To Federal *Habeas Corpus* Relief.................Page 27
       2.       Petitioner's Claims Concerning Matters That Occurred Prior To The Entry Of His Guilty Plea Must Be Denied (All Claims Except Claims 4 and 7(d)–(g))........................................................Page 28
            i.      The Claims Are Not Cognizable Upon Federal *Habeas* Review Because Petitioner's Guilty Plea Was Knowingly And Voluntarily Entered.........................................Page 30
            ii.     Petitioner's Constitutionally Valid Guilty Plea Waives His <u>Brady</u> Claims as Well (Claims 1 and 5)...................Page 33
                a.     Even If The Allegedly Undisclosed Impeachment Material Did Affect The Constitutional Validity of Petitioner's Guilty Plea, The <u>Brady</u> Claims Must Still Be Denied As Procedurally Barred.....................Page 35
            iii.    Petitioner's Constitutionally Valid Guilty Plea Waives His Ineffective Assistance Of Trial Counsel Claims As Well (Claim 3).................................................................Page 40
                a.     Even If Petitioner's Ineffective Assistance Of Trial Counsel Claims Were Not Waived By His Guilty Plea, *Habeas* Relief Is Still Not Warranted.................Page 42
                    *1.*    The State Court's Denial Of Claims 3(b) and 3(f) Were Not Contrary To, Nor An Unreasonable Application of, <u>Strickland</u>..........Page 42
                    *2.*    Claims 3(h)–(i) Remain Unexhausted But Procedurally Barred.........................................Page 46
                    *3.*    The State Court's Denials Of Claims 3(a), 3(c)–(e), And 3(g) Were Not Contrary To, Nor An Unreasonable Application Of, <u>Strickland</u>...............................................Page 48
       3.       *Habeas* Relief Is Not Warranted On Petitioner's Claims Concerning Matters That Occurred After The Entry Of His Guilty Plea (Claims 4 and 7(d)–(g))........................................Page 52
            i.      Petitioner's Ineffective Assistance of Appellate Counsel Claims Are Either Unexhausted But Procedurally Barred Or Otherwise Plainly Meritless (Claim 4)................................Page 52
            ii.     Petitioner's Claims Arguing Trial Court Error Are Unexhausted But Procedurally Barred (Claims 7(d)–(g))........Page 57

IV.   Conclusion...........................................................................................Page 59

# I.  INTRODUCTION

Proceeding *pro se*, Earl Hayes ("Petitioner") seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 challenging his August 28, 2007 conviction in Sullivan County Court (Ledina, J.). Petitioner pled guilty to criminal possession of a forged instrument, criminal possession of stolen property, scheme to defraud, and identity theft in connection with a credit card scam.  He is currently serving an aggregate prison term of five and one-half to eleven years.  This petition comes before me pursuant to an Order of Reference dated March 10, 2011.  (Dkt. 10.)   For the reasons set forth below, I respectfully recommend that this petition be **DENIED**.

# II.  BACKGROUND

## A.    The Arrest[1]

On October 26, 2005, Petitioner entered a Wal-Mart store located on Annawana Lake Road in the Town of Thompson, Sullivan County, and attempted to purchase a cell phone from the electronics department with a credit card.  The credit card was declined and Petitioner left the store.  The sales associate, however, noticed that the name on the credit card was different than the name printed on the declined credit card receipt.  The associate contacted the store's loss prevention center, who in turn contacted the local police.  Detective Jason Gorr ("Gorr") arrived at the store and, through the store's security system, observed Petitioner return to the store and purchase a laptop computer and several gift cards.[2]  Petitioner exited the store and placed his

---

[1] Unless otherwise indicated, the information within this section is taken from a review of Respondent's Answer ("Resp't's Answer") (Dkt. 21), the exhibits attached to Respondent's Answer, and Respondent's Memorandum of Law in Support of Answer ("Resp't's Mem.") (Dkt. 21).

[2] The detective's last name is inconsistently spelled "Gorr" or "Gore" throughout the record.  I refer to him as "Gorr."

1

purchase inside his vehicle.

Gorr followed Petitioner and spoke with him in the parking lot.  At some point, Petitioner produced his state identification card.  The card was checked in the police database and discovered that Petitioner's driver's license was suspended.  Gorr recovered several credit cards and/or store gift cards from Petitioner's person.  At some point, Gorr spoke with Petitioner's fiancée, who informed him that Petitioner had left their house earlier in her vehicle in order to drive to Wal-Mart.  The fiancée also consented to a search of her vehicle, where police discovered the laptop Petitioner had earlier purchased, a second laptop, and documents.

Petitioner was arrested and charged him with aggravated unlicensed operation of a motor vehicle and "suspicion" of a forged instrument.  Law enforcement obtained a warrant and also searched his residence.

**B.** **The Indictment And Arraignment**

By Sullivan County indictment filed January 11, 2006, Petitioner was indicted on the following offenses:

(1)     13 counts of criminal possession of a forged instrument in the second degree, in violation of N.Y. Penal Law § 170.25 (counts 1, 3, 5, 7, 9, 11, 14, 15, 16, 17, 23, 25, and 27 of the indictment);[3]

(2)     7 counts of unlawful possession of personal identification information in the third degree, in violation of N.Y. Penal Law § 190.81 (counts 2, 4, 6, 8, 10, 12, and 22 of the indictment);[4]

---

[3] "A person is guilty of criminal possession of a forged instrument in the second degree when, with knowledge that it is forged and with intent to defraud, deceive or injure another, he utters or possesses any forged instrument of a kind specified in section 170.10."  N.Y. Penal Law § 170.25.  Section 170.10 includes "credit card . . . or other instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status" as forged instruments.  Id. § 170.10.

[4] "A person is guilty of unlawful possession of personal identification information in the third degree when he or she knowingly possesses a person's . . . credit card account number . . .

2

(3)     1 count of grand larceny in the fourth degree, in violation of N.Y. Penal Law § 155.30(1) (count 13 of the indictment);[5]

(4)     1 count of criminal possession of stolen property in the third degree, in violation of N.Y. Penal Law § 165.50 (count 18 of the indictment);[6]

(5)     2 counts of identity theft in the third degree, in violation of N.Y. Penal Law § 190.78(1) (counts 19 and 24 of the indictment);[7]

(6)     3 counts of identity theft in the second degree, in violation of N.Y. Penal Law § 190.79(1) (counts 20, 26, and 28 of the indictment);[8]

(7)     1 count of scheme to defraud in the first degree, in violation of N.Y. Penal

---

knowing such information is intended to be used in furtherance of the commission of a crime defined in this chapter." N.Y. Penal Law § 190.81.

[5] "A person is guilty of grand larceny in the fourth degree when he steals property and when . . . [t]he value of the property exceeds one thousand dollars . . . ." N.Y. Penal Law § 155.30(1).

[6]

A person is guilty of criminal possession of stolen property in the third degree when he knowingly possesses stolen property, with intent to benefit himself or a person other than an owner thereof or to impede the recovery by an owner thereof, and when the value of the property exceeds three thousand dollars.

N.Y. Penal Law § 165.50.

[7]

A person is guilty of identity theft in the third degree when he or she knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby . . . obtains goods, money, property or services or uses credit in the name of such other person or causes financial loss to such person or to another person or persons . . . .

N.Y. Penal Law § 190.78(1).

[8]

A person is guilty of identity theft in the second degree when he or she knowingly and with intent to defraud assumes the identity of another person by presenting himself or herself as that other person, or by acting as that other person or by using personal identifying information of that other person, and thereby . . . obtains goods, money, property or services or uses credit in the name of such other person in an aggregate amount that exceeds five hundred dollars . . . .

N.Y. Penal Law § 190.79(1).

3

Law § 190.65(1)(a) (count 21 of the indictment);[9] and

(8)     1 count of aggravated unlicensed operation of a motor vehicle in the second degree, in violation of N.Y. Vehicle & Traffic Law § 511(2)(a)(iv) (count 29 of the indictment).[10]

---

[9]

A person is guilty of scheme to defraud in the first degree when he or she . . . engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud ten or more persons or to obtain property from ten or more persons by false or fraudulent pretenses, representations or promises, and so obtains property from one or more of such persons . . . .

N.Y. Penal Law § 190.65(1)(a).

[10]

A person is guilty of the offense of aggravated unlicensed operation of a motor vehicle in the second degree when such person commits the offense of aggravated unlicensed operation of a motor vehicle in the third degree . . . and . . . such person has in effect three or more suspensions, imposed on at least three separate dates, for failure to answer, appear or pay a fine, pursuant to subdivision three of section two hundred twenty-six or subdivision four-a of section five hundred ten of this chapter.

N.Y. Veh. & Traf. Law § 511(2)(a)(iv).

A person is guilty of aggravated unlicensed operation of a motor vehicle in the third degree when such person operates a motor vehicle upon a public highway while knowing or having reason to know that such person's license or privilege of operating such motor vehicle in this state or privilege of obtaining a license to operate such motor vehicle issued by the commissioner is suspended, revoked or otherwise withdrawn by the commissioner.

Id. § 511(1)(a).

If the person charged with the violation shall fail to answer the summons as provided herein, the commissioner may suspend such person's license or driving privilege . . . until such person shall answer as provided in subdivision two of this section.  If a person shall fail to appear at a hearing, when such is provided for pursuant to this section, such person's license, or registration or privilege of operating or of operation, as appropriate, may be suspended pending appearance at a subsequent hearing, or the disposition of the charges involved. . . .

Id. § 226(3)(a).

Upon receipt of a court notification of the failure of a person to appear within sixty

4

(Resp't's Answer, at Ex. A.[11])  On January 12, 2006, Petitioner appeared with counsel at arraignment and moved to dismiss the indictment.  The motion was denied and a plea of not guilty was entered.  (See Exs. B-H.)

## C.    The Pretrial Proceedings

Through counsel, Petitioner filed a pretrial omnibus motion which demanded, among other things, certain discovery.  (Ex. J.)  In its opposition to the motion, the prosecution noted that defense counsel had informally requested that the prosecution produce "digital videos of the defendant inside WalMart," and had informed the prosecutor "that he was seeking other videos directly from WalMart in order to determine whether the evidence seized from the defendant was suppressible."  (Ex. K, at 6-7 (unpaginated).)  In his reply, Petitioner argued, among other things, that the search warrant for his residence was invalid and that the arrest was not based on probable cause.  (Ex. M.)  The trial court granted the omnibus motion to the extent that it dismissed four counts of the indictment (counts 14-17), and it ordered, among other things, a pretrial hearing to determine if probable cause existed for Petitioner's arrest.  (Ex. O.)

The pretrial hearings were held on December 21, 2006 and January 9, 2007.[12]  (Exs. P-

_____

days of the return date or new subsequent adjourned date, pursuant to an appearance ticket charging said person with a violation of any of the provisions of this chapter . . . relating to traffic . . . or the failure to pay a fine imposed by a court the commissioner or his or her agent may suspend the driver's license or privileges of such person pending receipt of notice from the court that such person has appeared in response to such appearance ticket or has paid such fine. . . .

Id. § 510(4-a).

[11] Unless otherwise indicated, all exhibits cited herein are attached to Respondent's Answer (Dkt. 21).

[12] While the pretrial omnibus motion was pending, Petitioner, proceeding *pro se*, filed a petition, dated September 10, 2006, seeking a state writ of *habeas corpus*, with the Appellate

R.)  Three officers testified as well as one witness for Petitioner.  The relevant testimony from

Gorr is summarized below:

On October 26, 2005, Gorr received a telephone call from a loss prevention employee at

Wal-Mart.  The employee informed him that someone had attempted to purchase a cell phone

using a credit card, but the card had been declined and the name embossed on the card–"Earl

Hayes"–did not match the name that showed up on the cash register computer after the card was

swiped–"Samuel Jablanski."  The purchaser afterwards bought the phone using several store gift

cards.

Gorr arrived at the store, entered the loss prevention office, and personally observed the

declined credit card receipt.  Petitioner entered the store and Wal-Mart employees identified him

as the cell phone purchaser.  Gorr and the employees used the store's surveillance cameras to

watch Gorr enter the electronics department, purchase a laptop, and exit the store.  Gorr then

followed him outside and observed him walk to a vehicle, open the trunk and place something

inside, and open the driver's door.  Gorr identified himself, called another officer for backup,

told Petitioner why he wanted to speak to him, and requested Petitioner's identification.

Petitioner showed Gorr his state identification card.  Petitioner also showed Gorr a Mastercard

that had Petitioner's name embossed on it.

The police ran Petitioner's identification card through a database and discovered that his

license was suspended.  Petitioner, however, told Gorr that he had not driven to the store.

Instead, he told Gorr that he arrived with a friend named "Mark," but could not provide

"Mark's" last name.  Police then had Wal-Mart employees page a "Mark," but no one responded

---

Division, Third Department.  In that application, Petitioner argued that the trial court had failed
to enter an order on his application for bail.  (Ex. L.)

to those pages.

Petitioner used a cell phone and called his fiancée. Gorr spoke with her over the phone and learned from her that Petitioner had left their house by himself in her vehicle. Gorr then went back to the loss prevention office and reviewed surveillance tapes of the parking lot. He testified that the videos showed the vehicle that Petitioner had earlier placed the laptop into pulling into a parking spot, a person exiting its driver's side door, and that person–whom Gorr identified as Petitioner, wearing a dark colored coat with a white sleeve or a white stripe on the sleeve–walking up to the store. No one else emerged from the car. Gorr placed Petitioner under arrest for driving with a suspended license and for "suspicion of a forged instrument." At the time Gorr arrested Petitioner, Gorr testified that Petitioner was wearing a dark colored coat with a white stripe down the side.

Petitioner was patted down and police discovered several other credit and gift cards on his person. Petitioner's fiancée arrived at the store and consented to a search of her vehicle. The police recovered the laptop Petitioner had earlier purchased, as well as a second laptop and documents. Gorr denied that Petitioner ever told him that he wanted to leave before he was placed under arrest. Gorr also denied ever assaulting Petitioner.

At defense counsel's request, a CD containing Wal-Mart surveillance video footage was played during Gorr's cross-examination. The CD was played on the court's laptop computer, which was located at the bench. Gorr, counsel, and the court viewed the CD as it played while Gorr testified. Petitioner was moved into the jury box so that he could also see the screen.[13]

---

[13] As discussed more below, the basis of several claims Petitioner asserts in his *habeas* petition concern his contention that he could not see the laptop during the suppression hearing. I note only that the transcript of the proceeding indicates that, at defense counsel's request, the court acknowledged that Petitioner needed to be placed in a different location in the courtroom

Petitioner's witness, Tressa Evans ("Evans"), testified at the hearing that on October 26, 2005, she went to Wal-Mart to shop, saw Petitioner and police officers, and was told by one of the officers that Petitioner was not free to leave when she offered to give Petitioner a ride home.

The parties submitted post-hearing memoranda.  (Exs. S-T.)  Among other things, defense counsel argued that Gorr's testimony was not credible because the video clips did not actually show Petitioner driving the vehicle into the Wal-Mart parking lot.  He also argued that no evidence was presented to show how Gorr knew that Petitioner's name was embossed on the credit card that was used to attempt the cell phone purchase.  By written decision, the trial court ruled, among other things, that probable cause existed for the arrest.  (Ex. U.)

**D.   The Guilty Plea**

On March 2, 2007, on the eve of jury selection, Petitioner accepted a plea offer.  In exchange for recommended sentences, in the aggregate, of five and one-half to eleven years imprisonment, Petitioner pled guilty to: three counts of criminal possession of a forged instrument in the second degree (counts 1, 3, and 5 of the indictment); one count of criminal possession of stolen property in the third degree (count 18 of the indictment); one count of scheme to defraud in the first degree (count 21 of the indictment); and one count of identity theft in the second degree (count 20 of the indictment).  Among other things, Petitioner also waived

---

in order to view the screen.  There is no indication in the record that Petitioner could not, in fact, see the screen.

| | |
|---|---|
| [DEF. COUNSEL]: | . . . Your Honor, is there any way possible Mr. Hayes can position himself so that he can see [the video]? |
| THE COURT: | Sure.  I'm going to turn this anyway, so he can sit in the jury box. |

(Ex. Q, at 83.)

his right to appeal, confirmed that he was satisfied with his attorney, confirmed that he understood the elements of the plea bargain, allocuted, and pled guilty.  The court accepted the plea.  (See Exs. V-W.)

## E.   The Motion To Withdraw The Guilty Plea

By motion dated April 16, 2007, Petitioner, proceeding *pro se*, moved to withdraw his guilty plea on the ground that he was deprived his constitutional right to the effective assistance of counsel.  Specifically, he alleged that counsel was ineffective for:

(1)   failing to interview the Wal-Mart loss prevention employee and cashier in order to establish that Gorr was not being truthful in his suppression hearing testimony regarding his attempt to purchase the cell phone;

(2)   failing to secure the surveillance tapes of Gorr's encounter with Petitioner in the parking lot in order to show that Gorr was not being truthful in his testimony, assaulted Petitioner, and refused to let Petitioner leave;

(3)   coercing Petitioner not to testify at the suppression hearing by incorrectly informing him that his statements would be cumulative and could be used as evidence against him at trial;

(4)   failing to follow Petitioner's suggestions and make certain arguments in his post-suppression hearing memorandum of law;

(5)   failing to contact and interview Evans prior to her appearance at the suppression hearing;

(6)   failing to move to suppress evidence seized during the search of Petitioner's residence and his fiancée's vehicle;

(7)   failing to move to order that Petitioner's first attorney produce all files maintained on Petitioner; and

(8)   failing to follow the strategy for setting bail that Petitioner and his family had devised and failing to secure bail.

Petitioner also requested a copy of the grand jury transcripts in his motion.  (Ex. X.)

Petitioner served the motion during an April 25, 2007 conference that was originally scheduled for his sentencing.  Petitioner's attorney moved to withdraw, Petitioner did not oppose the motion, and the court granted it.  The court then set a briefing schedule on Petitioner's motion to withdraw his plea and adjourned the matter.  (Ex. Y.)

Petitioner subsequently retained new counsel, who submitted a reply.  (Ex. EE.)  By

decision and order dated August 17, 2007, the court denied Petitioner's motion.  (Ex. GG.)

By application dated May 29, 2007, Petitioner also requested that the court order a subpoena *duces tecum* for records maintained by local law enforcement.  (Ex. AA.)  The trial court denied the application on June 21, 2007, (Ex. DD), and again in the court's August 17, 2007 decision, (Ex. GG).

## F.    The Sentencing

In accordance with the plea bargain, the court sentenced Petitioner on August 28, 2007, as a second felony offender,[14] to the following: concurrent, indeterminate terms of three and one-half to seven years imprisonment on counts 1, 3, 5 and 18 of the indictment (three counts of criminal possession of a forged instrument in the second degree and one count of criminal possession of stolen property in the third degree); and concurrent, indeterminate terms of two to four years imprisonment on counts 20 and 21 of the indictment (identity theft in the second degree and scheme to defraud in the first degree), to run consecutively to the terms imposed on counts 1, 3, 5, and 18.  Accordingly, Petitioner was sentenced to a total, aggregate term of five and one-half to eleven years imprisonment.  (Ex. HH.)

## G.    The Direct Appeal

Petitioner was represented by different counsel on direct appeal.  Appellate counsel submitted a brief that raised one claim: (1) the court's denial of Petitioner's motion to withdraw his guilty plea without first conducting an evidentiary hearing constituted an abuse of its discretion.  (Ex. RRR.)  By *pro se* supplemental brief, Petitioner raised the following additional

---

[14] Petitioner was convicted on April 1, 2003 of criminal possession of a controlled substance in the fifth degree.  (See Ex. Y, at 3-4; Ex. HH, at at 2-3); N.Y. Penal Law § 220.06(5).

claims:

    (2)    there was "a <u>Pelchat</u> violation during the suppression hearing that mandates reversal of the conviction;"[15]

    (3)    Petitioner "received ineffective assistance of counsel in violation of the federal and state constitutions" when counsel:

        (a)    "failed to obtain the video footage of the entire Wal-Mart parking lot encounter;"

        (b)    "failed to highlight the inconsistencies in Detective Gorr's sworn averments/testimony;"

        (c)    "Provided appellant with an erroneous interpretation of the law in response to appellant's indication that he wanted to testify at the suppression hearing;"

        (d)    "failed to investigate appellant's claim that the police had searched his residence prior to obtaining the search warrant;"

        (e)    did not "call attention to Detective Gorr's false testimony regarding the images depicted in the video clips that were played during the suppression hearing," and "did not attempt to correct Detective Gorr's false testimony;" and

        (f)    "submitted an incoherent and factually inaccurate memorandum in support of the suppression motion;"

    (4)    there was "spoliation of evidence;"

    (5)    the prosecution failed "to provide the defense with video footage of the entire one-hour police encounter," in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963);

    (6)    Petitioner's waiver of appeal was "elicited in order to conceal error(s) or prosecutorial overreaching;" and

    (7)    "Penal Law § 70.25(2) mandate[d] concurrent sentences of imprisonment."

(Ex. SSS, at *i–ii* (typeface altered from original).)  Petitioner also submitted a *pro se* "addendum appellate brief" which added one sentence and an additional <u>Brady</u> claim:

    (8)    the prosecution "failed to provide the defense with a copy of the video footage showing the initial cell phone transaction that, according to the People, set in motion the events that led to appellant's arrest, prosecution and conviction."

(Ex. TTT, at 2; <u>see also</u> Ex. YYY.)

    The Third Department affirmed the judgment in a written decision on March 4, 2010.

---

[15] <u>People v. Pelchat</u>, 62 N.Y.2d 97 (1984).

People v. Hayes, 896 N.Y.S.2d 225 (App. Div. 3d Dep't 2010).  By *pro se* application dated

March 22, 2010, Petitioner moved the Third Department for re-argument.  (Exs. AAAA,

CCCC–DDDD.)  The Third Department denied the application on May 21, 2010.  (Ex. EEEE.)

By letter dated June 29, 2010, Petitioner, proceeding *pro se*, sought leave to appeal from the

New York State Court of Appeals.  (Ex. FFFF.)  Leave was denied on September 3, 2010.

People v. Hayes, 15 N.Y.3d 852 (2010).  By *pro se* application dated September 28, 2010,

Petitioner moved for re-argument/reconsideration.  (Exs. IIII, KKKK, PPPP.)  The Court of

Appeals denied this application on November 30, 2010.  People v. Hayes, 15 N.Y.3d 921 (2010).

     Petitioner did not seek a writ of *certiorari* to the United States Supreme Court.  (See Pet.

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Pet.") ¶¶ 9(f)

(Dkt. 1).)

**H.**    **The State *Habeas Corpus* Petitions**

    **1.**    **The Second State Habeas *Petition***[16]

    Prior to sentencing, Petitioner filed a *pro se* application, dated August 4, 2007, seeking a

state writ of *habeas corpus* in the Appellate Division, Third Department.  Petitioner argued in his

application that he was being detained in violation of his federal and state constitutional rights to

be free from unreasonable search and seizure and for the effective assistance of counsel.  (See

Exs. FF, JJ.)  The Third Department denied the application on October 18, 2007.  (Ex. LL.)  The

record does not reflect whether Petitioner sought leave to appeal this decision.

    **2.**    **The Third State Habeas *Petition***

    By *pro se* application dated July 24, 2009, Petitioner sought a third state writ of

---

[16] As noted, Petitioner's first state *habeas* petition was filed while his pretrial omnibus motion was pending and is not relevant to the instant federal petition. (See supra n.12.)

*habeas corpus* in the Appellate Division, Third Department.  In that application, Petitioner

argued that he was being confined in violation of <u>People v. Pelchat</u>, 62 N.Y.2d 97 (1984)

because the prosecutor knowingly allowed false testimony to be introduced at the suppression

hearing.  (Ex. NNN, at Ex. H.)  The Third Department denied the petition on October 2, 2009.

(Ex. VVV.)  The record does not reflect whether Petitioner sought leave to appeal this decision.

## I.     **The Motions To Vacate The Judgment Of Conviction And Set Aside The Sentence**

### 1.     *The First § 440.10 Motion*

By *pro se* application dated October 16, 2007, Petitioner moved to vacate the judgment

of his conviction pursuant to N.Y. Crim. Proc. Law § 440.10(1)(b), (c), (d), (f), and (h) on the

grounds that:[17]

(1)    he was "denied the effective assistance of counsel throughout the proceedings but primarily with respect to matters dealing with suppression issues;"

(2)    "the judgment was procured by duress, misrepresentation(s) or fraud by the prosecutor in the case;" and

(3)    "he was deprived of due process and fundamental fairness during the

---

[17]

At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that . . . (b) [t]he judgment was procured by duress, misrepresentation or fraud on the part of the court or a prosecutor or a person acting for or in behalf of a court or a prosecutor; or (c) [m]aterial evidence adduced at a trial resulting in the judgment was false and was, prior to the entry of the judgment, known by the prosecutor or by the court to be false; or (d) [m]aterial evidence adduced by the people at a trial resulting in the judgment was procured in violation of the defendant's rights under the constitution of this state or of the United States; or . . . (f) [i]mproper and prejudicial conduct not appearing in the record occurred during a trial resulting in the judgment which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom; or . . . (h) [t]he judgment was obtained in violation of a right of the defendant under the constitution of this state or of the United States . . . .

N.Y. Crim. Proc. Law § 440.10(1)(b)–(d), (f), (h).

proceedings because the Court took a personal interest in the outcome of the case and thereby compromised it's fairness and impartiality, and it's neutrality and detachment."

(Ex. KK ¶ 2; see also Exs. NN–QQ.)

By decision and order dated January 9, 2008, Petitioner's motion to vacate was denied. (Ex. RR.)  By letter dated January 18, 2008, Petitioner sought reconsideration of his motion. (Exs. SS; VV.)  By decision and order dated April 2, 2008, that request was denied.  (Ex. WW.[18]) Petitioner sought leave to appeal, (Ex. XX), which the Third Department denied on May 27, 2008, (Ex. ZZ).  Petitioner sought to appeal the Third Department's decision denying him leave.[19]  By letter dated June 24, 2008, Petitioner was informed by the New York State Court of Appeals that the decision was not appealable.  (Ex. BBB.)

### 2.   *The Second § 440.10 Motion*

By *pro se* application dated December 8, 2008, Petitioner moved a second time to vacate the judgment of his conviction pursuant to N.Y. Crim. Proc. Law § 440.10(1)(b) and (h).  In this application, Petitioner argued that (1) the prosecutor knowingly allowed false testimony and evidence to be introduced during the grand jury proceedings and at the suppression hearing, and (2) counsel was ineffective for failing to argue that the prosecutor had allowed this.  (Exs. CCC, EEE.)

The trial court denied the motion by decision and order dated April 8, 2009.  (Ex. GGG.) Petitioner sought leave to appeal, (Exs. HHH, JJJ), which the Third Department denied on June 19, 2009, (Ex. LLL).

---

[18] The court also denied Petitioner's motions for recusal and change of venue.

[19] A copy of this application does not appear in the record.

14

### 3. The § 440.20 Motion

By *pro se* application dated July 31, 2009, Petitioner moved to set aside a portion of his sentence pursuant to N.Y. Crim. Proc. Law § 440.20.[20]  Specifically, he argued that the consecutively imposed sentence of two to four years should be vacated because it violated N.Y. Penal Law § 70.25(2).[21]  (Exs. MMM, PPP, UUU.)  The trial court denied the motion on November 6, 2009.  (Ex. WWW.)  The record submitted in this case does not indicate whether this decision was appealed.

### 4. The Third § 440.10 Motion

Proceeding *pro se*, Petitioner filed a third motion to vacate the judgment of his conviction after he filed the instant petition seeking a federal writ of *habeas corpus*.  By application dated March 2, 2011, Petitioner argued that the prosecutor failed to turn over two pages of Gorr's notes which Petitioner subsequently obtained during discovery in one of his federal civil actions. (Exs. YYYY, BBBBB–CCCCC.)  The trial court denied the motion on April 6, 2011.  (Ex. DDDDD.)  By application dated April 12, 2011, Petitioner moved for re-argument and reconsideration. (Exs. FFFFF, KKKKK.)  The trial court denied the motion on May 12, 2011. (Ex. LLLLL.)

By letter dated April 21, 2011 (prior to the date the trial court issued its decision on

---

[20] "At any time after the entry of a judgment, the court in which the judgment was entered may, upon motion of the defendant, set aside the sentence upon the ground that it was unauthorized, illegally imposed or otherwise invalid as a matter of law. . . ."  N.Y. Crim. Proc. Law § 440.20(1).

[21] "When more than one sentence of imprisonment is imposed on a person for two or more offenses committed through a single act or omission, or through an act or omission which in itself constituted one of the offenses and also was a material element of the other, the sentences . . . must run concurrently."  N.Y. Penal Law § 70.25(2).

Petitioner's motion for reconsideration), Petitioner sought leave to appeal.  (Ex. HHHH.)  The

Third Department denied leave on June 3, 2011.  (Ex. NNNNN.)  By letter dated June 7, 2011,

Petitioner sought leave to appeal the Third Department's decision from the New York State

Court of Appeals. (Ex. OOOOO.)  The record submitted by Respondent does not reflect the

outcome of this application.

**J.      The Petition For *Error Coram Nobis*[22]**

By *pro se* application dated September 29, 2010, Petitioner sought a writ of *error coram*

*nobis* in the Third Department.  In that application, Petitioner argued, *inter alia*, that appellate

counsel was ineffective for failing to argue that trial counsel was ineffective.  (Exs. JJJJ, LLLL,

OOOO, QQQQ, SSSS.)  The Third Department denied the application on November 9, 2010.

(Ex. TTTT.)  Petitioner did not seek leave to appeal this decision from the New York State

Court of Appeals.  (Dkt. 38.)

**K.      Other Federal Civil Actions**

Petitioner has filed several other federal civil lawsuits in this district, some of which

relate to the conviction he now challenges in the instant federal *habeas* petition.  See Nos. 10

Civ. 5511(KMK), 09 Civ. 2071(RPP); 07 Civ. 7667(KMK)(PED), No. 09 Civ.

2458(KMK)(PED).

**L.      The Federal *Habeas Corpus* Proceeding**

By petition dated February 15, 2011, as amended on April 19, 2011 (see Dkts. 1, 15, 17-

---

[22] Petitioner appears to have filed a second *error coram nobis* petition sometime in 2013. As discussed below, Petitioner has not moved to amend his petition to add these new claims, and this Court declines to construe his recent submission as a request to do so.  (See *infra* n.39.)

19)), Petitioner seeks a federal writ of *habeas corpus*.[23]  He raises the following claims:

(1)   "A Giglio/Brady/Alcorta/Napue violation occurred when the People's witness committed perjury during the suppression hearing and the prosecutor failed to correct it,"[24] (Pet. ¶ 12 (Dkt. 1));

(2)   "A Waller violation occurred when the trial court ruled that video evidence would be viewed on its laptop computer at the bench during the suppression hearing,"[25] (id.);

(3)   Ineffective assistance of trial counsel because counsel:

    (a)   "ignored Detective Gorr's perjurious testimony during the suppression hearing,"

    (b)   "failed to highlight or even mention Detective Gorr's equivocal, conflicting and self-contradictory testimony during the suppression hearing,"

    (c)   "failed to obtain the surveillance video of the one-hour Wal-Mart parking lot encounter between the Sullivan County law enforcement officers and petitioner,"

    (d)   "failed to obtain the radio runs to petitioner's home by the Dutchess County law enforcement officers,"

    (e)   "deprived petitioner of his constitutional right to testify at the suppression hearing and place his own version of the events on the record by providing advice based on a misinterpretation of the law,"

    (f)   "submitted a hastily drafted, incoherent Memorandum of Law containing legal arguments that were based on factual inaccuracies,"

    (g)   "failed to argue that the People failed to comply with their obligation to provide Brady material" and "failed to seek appropriate sanctions for the People's Brady violation,"

    (h)   "failed to argue that probable cause for petitioner's traffic arrest was lacking because driving in a [private] parking lot does not provide probable cause for Aggravated Unlicensed Operator," and

    (i)   "failed to object to the arrangements that the Court made to view the Wal-Mart surveillance videos during the suppression hearing and thereby acquiesced in the Trial Court's WALLER violation,"

---

[23] The petition was timely filed.  See 28 U.S.C. § 2244(d).

[24] See Giglio v. United States, 405 U.S. 150 (1972) (extending the Court's holding in Brady to require disclosure of any promises between a prosecutor and a witness that the witness would not be prosecuted in exchange for his or her testimony); Napue v. Illinois, 359 U.S. 264 (1959) (due process violated where prosecutor knowingly presents false testimony); Alcorta v. Texas, 355 U.S. 28 (1957) (per curiam) (same).

[25] See Waller v. Georgia, 467 U.S. 39 (1984) (unjustified closure of suppression hearing violates defendant's Sixth Amendment right to public trial).

17

(Addendum to Pet., at 2-3 (attached to Pet.));

(4)    Ineffective assistance of appellate counsel for counsel's failure to argue that:

    (a)    "a GIGLIO/BRADY/ALCORTA/NAPUE violation [*sic*] occurred when the People's witness (Gorr) committed perjury during the suppression hearing and the prosecutor failed to take action to correct it,"

    (b)    "trial counsel rendered ineffective assistance of counsel for failing to object when Gorr committed perjury during the viewing of the videos during the suppression hearing,"

    (c)    "trial counsel rendered ineffective assistance of counsel for failing to obtain a copy of the one-hour parking lot encounter,"

    (d)    "trial counsel rendered ineffective assistance of counsel for failing to obtain a copy of the radio runs to petitioner's home on the date of his arrest from the DCSO and the PPD,"

    (e)    "trial counsel rendered ineffective assistance of counsel for failing to seek suppression of all evidence seized from petitioner's home on the ground that the police had unlawfully entered into and searched petitioner's home prior to issuance and execution of the search warrant," and

    (f)    "trial counsel rendered ineffective assistance of counsel for failing to argue that petitioner's arrest for AUO was made without probable cause because it was based on an allegation that petitioner had only been seen driving through a parking lot and there was no evidence produced to establish that petitioner had driven on a public highway," (id. at 15-16);

(5)    a Brady violation occurred when the prosecutor:

    (a)    "failed to preserve the video of the one-hour parking lot encounter that immediately preceded Petitioner's formal arrest,"

    (b)    "failed to preserve the video of the cell phone transaction that preceded the parking lot encounter,"

    (c)    "failed to disclose the nature of detective Gorr's perjurious testimony during the suppression hearing," (Addendum to Pet., at 16 (typeface altered from original)); and

    (d)    "failed to provide the defense with a copy of Detective Gorr's handwritten notes prior to Detective Gorr's suppression hearing testimony," (id. at 26 (typeface altered from original) (Dkt. 18));[26]

(6)    "unlawful spoliation of evidence by the prosecution," occurred, (id. at 18 (typeface altered from original));[27]

---

[26] Pages 26-29 of the "Addendum to Petition," as well as Exhibits "I" and "H" thereof, are docketed separately at Docket 18.

[27] During discovery, the prosecution produced surveillance videos showing Petitioner at a Wal-Mart in Sullivan County (the incident described above), as well as at another Wal-Mart

(7)    the trial court erred when it:

    (a)    deprived Petitioner of his constitutional rights to be present at every material stage of the proceedings, to present evidence, and to due process, when it viewed the surveillance videos on a laptop that Petitioner could not view during the suppression hearing,

    (b)    deprived Petitioner of his constitutional right to a public trial and to due process when it viewed the surveillance video on a laptop that neither Petitioner, nor the public, could view during the suppression hearing,

    (c)    "deprived petitioner of a fair trial and deprived petitioner of his fifth and fourteenth amendment rights to due process when it remained silent and failed to take any corrective action while Detective Gorr committed perjury during the suppression hearing," (id. at 19 (typeface altered from original)),

    (d)    "deprived the petitioner of his constitutional right to due process" and "abused its discretion when it failed to assign counsel to represent petitioner on or about April 25, 2007, after petitioner moved to withdraw his guilty plea, and after counsel for petitioner was permitted to withdraw from the case," (id. (typeface altered from original)),

    (e)    "deprived the petitioner of his constitutional right to due process" and "abused its discretion when it refused to order counsel to forward the case file to petitioner after counsel had been permitted to withdraw from the case and petitioner was proceeding pro se," (id. (typeface altered from original)),

    (f)    "deprived the petitioner of his constitutional right to due process" and "abused its discretion when it refused to issue an order directing Wal-Mart to provide petitioner with a copy of the video of the one-hour parking lot encounter or issue an order directing Wal-Mart to present said video," (id. at 19, 20 (typeface altered from original)), and

    (g)    "deprived the petitioner of his constitutional right to due process" and "abused its discretion when it refused to issue a subpoena or order to the Dutchess County Sheriff's Office and the City of Poughkeepsie Police Department directing them to provide petitioner with records of the radio runs to petitioner's home on the date of his arrest while petitioner's motion to withdraw his guilty plea was pending," (id. at 19, 20 (typeface altered from original)); and

(8)    "Detective Gorr committed perjury when, during the December 21, 2006

store in Dutchess County. Petitioner asserts in Claim 6 that the video from the Dutchess County Wal-Mart has "date, time and Store Number information" recorded in it, but the video from the Sullivan County store does not. Petitioner claims that the prosecution is responsible for the "missing" corresponding information in the Sullivan County store video. (Addendum to Pet., at 18.)

suppression hearing, he testified that he did not take any notes in regard to the criminal investigation that preceded and followed Petitioner's arrest," (id. at 26).

Respondent has filed an answer and a supporting memorandum of law in opposition to the petition. (Dkt. 21.)  Petitioner has also filed: a VHS tape that apparently contains the surveillance videos shown during the suppression hearing (Dkt. 25); a reply memorandum of law, (Dkt. 27); a June 29, 2011 declaration by Petitioner's father, (Dkt. 28); materials filed in connection with a recent *error coram nobis* application Petitioner filed in state court (Dkt. 34); and letters dated June 30, 2012, (Dkt. 31), July 8, 2012, (Dkt. 32), and June 2, 2013 (Dkt. 33), which discuss the video and other matters.

## III. DISCUSSION

### A.      Applicable Law On *Habeas Corpus* Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254.  If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d).  The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized below.

### 1.      *Timeliness Requirement*

A federal *habeas* petition is subject to AEDPA's strict, one-year statute of limitations.

See 28 U.S.C. § 2244(d).  The statute provides four different potential starting points for the limitations period, and specifies that the latest of these shall apply.  See id. § 2244(d)(1).  Under the statute, the limitation period is tolled only during the pendency of a properly filed application for State post-conviction relief, or other collateral review, with respect to the judgment to be challenged by the petition.  See id. § 2244(d)(2).  The statute reads as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of–
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (d)(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way' and prevented timely filing."  Holland v. Florida, 130 S. Ct. 2549, 2562 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  Harper v. Ercole, 648 F.3d 132, 137 (2d Cir. 2011).  "To secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances.  He must further demonstrate that those

21

circumstances caused him to miss the original filing deadline." Id. Finally, "[c]onsistent with the maxim that equity aids the vigilant, a petitioner seeking equitable tolling of AEDPA's limitations period must demonstrate that he acted with reasonable diligence throughout the period he seeks to toll." Id. at 138 (internal quotation marks and citations omitted); see also Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000) (the applicant for equitable tolling must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances").

### 2.      *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his claims in state court. O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see § 2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–(A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant"); id. § 2254(c) (the petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented"). The exhaustion requirement promotes interests in comity and federalism by demanding that state courts have the first opportunity to decide a petitioner's claim. Rose v. Lundy, 455 U.S. 509, 518-19 (1982).

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review),

22

thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court.

23

See, e.g., Reyes, 118 F.3d at 139.  However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," Harris v. Reed, 489 U.S. 255, 262 (1989), or "actual innocence," Schlup v. Delo, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless."  Rhines v. Weber, 544 U.S. 269, 277 (2005); see § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also, e.g., Padilla v. Keane, 331 F. Supp. 2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3.     *Procedural Default*

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it.  Harris, 489 U.S. at 262; see also Coleman v. Thompson, 501 U.S. 722, 730 (1991); Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law.  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006) (citing Coleman, 501 U.S. at 740).  A decision will be "adequate" if it is "'firmly established and regularly followed' by the state in question."  Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)).  The determination of whether a state procedural rule is "firmly

established and regularly followed" requires inquiry into "the specific circumstances presented

in the case." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citing Lee v. Kemma, 534 U.S.

362, 386-87 (2002)). The Second Circuit has identified three "guideposts" for making this

determination:

> (1) whether the alleged procedural violation was actually relied on in the trial court,
> and whether perfect compliance with the state rule would have changed the trial
> court's decision; (2) whether the state caselaw indicated that compliance with the
> rule was demanded in the specific circumstances presented; and (3) whether
> petitioner had "substantially complied" with the rule given "the realities of trial,"
> and, legitimate government interest.

Id. (citing Lee, 534 U.S. at 381-85).

### 4.   *AEDPA Standard Of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas*

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal habeas corpus

courts in reviewing petitions filed by state prisoners," and imposed a more exacting standard of

review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed after AEDPA became

effective, federal courts must apply the following standard to cases in which the state court

adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state

25

court has both adjudicated the federal claim "on the merits," and reduced its disposition to judgment. <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001). Where the state court "did not reach the merits" of the federal claim, however, "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed *de novo*." <u>Cone v. Bell</u>, 556 U.S. 449, 472 (2009); <u>see</u> § 2254(d).

Under the first prong of the AEDPA deferential standard, a state court decision is contrary to federal law only if it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if [it] decides a case differently than [the Supreme Court] on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413. A decision involves an "unreasonable application" of Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." <u>Id.</u> at 407.

> Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court. . . . If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. . . . It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal. . . . As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the federal claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement.

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (internal quotation marks and citations omitted).

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct.  § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (citing Green v. Scully, 850 F.2d 894, 900 (2d Cir. 1988) ("'[t]he factual findings of the New York Courts are presumed to be correct'").  The petitioner must rebut this presumption by "clear and convincing evidence."  § 2254(e)(1).

## B.      Application

### 1.      *Petitioner's Executed Waiver Of His Right To Appeal Is Not An Absolute Bar To Federal* **Habeas Corpus** *Relief*

As an initial matter, Respondent argues that the petition should be denied in its entirety because Petitioner "knowingly, intelligently and voluntarily waived his right to appeal, which includes the right to file a federal writ of habeas corpus, thereby, creating independent and adequate state procedural grounds barring federal review of his writ of habeas corpus." (Resp't's Mem., at 7 (unpaginated) (Dkt. 21); see id. at 7-13.)  Petitioner contends, in part, that the state courts did not rely on his appellate waiver to deny his claims.  (See Reply Traverse, at 14 (unpaginated) (Dkt. 27).)

To the extent that Respondent argues that an executed waiver of appellate rights constitutes an absolute bar to federal *habeas* relief, Respondent is incorrect.  This argument misconstrues the *habeas* comity principle which demands that a federal court abstain from reviewing a *claim* where the last-reasoned state court decision to address that *claim* relied upon "an adequate and independent finding" of a state procedural rule.  Harris, 489 U.S. at 262. Respondent offers no authority to support his contention that an individual is precluded from

27

filing a petition for federal *habeas* relief simply because he signed an agreement waiving appellate review.

To the extent that the state courts *actually relied upon* Petitioner's appellate waiver to deny one or more of his *claims*, Respondent's argument is addressed below.

> **2.    *Petitioner's Claims Concerning Matters That Occurred Prior To The Entry Of His Guilty Plea Must Be Denied (All Claims Except Claims 4 and 7(d)–(g))*[28]**

Most of Petitioner's claims relate to events which preceded his guilty plea.  First, Petitioner contends that Gorr committed perjury when he testified at the suppression hearing. Among other things, he specifically maintains that Gorr falsely testified about date- and time-stamp data on the surveillance videos, that the cashier had physically handled the credit card Petitioner tried to use to purchase the cell phone, and that the videos showed someone recognizable as Petitioner driving a vehicle, exiting the vehicle, and entering the store. Petitioner maintains that the prosecutor knowingly allowed Gorr testify falsely without bringing it to the attention of the court and the defense.  He also maintains that the court and his defense attorney were complicit in this regard.  Claims 1, 3(a)–(b), 3(g), 5(c), 7(c), and 8 of the petition all present arguments that seek *habeas* relief based on these contentions.

Second, Petitioner maintains that the prosecutor knowingly failed to disclose information to the defense or otherwise manipulated evidence.  He also contends that his attorney and the court erred by failing to ensure that Petitioner received this information, which comprised Gorr's allegedly perjured testimony, additional surveillance videos showing Petitioner's attempted cell phone purchase, Petitioner's encounter with Gorr in the parking lot, handwritten notes taken by Gorr during the investigation, police records regarding the execution of the search warrant at

---

[28] I refer to Petitioner's claims as I have numbered them in Section II(L) above.

Petitioner's home, and removal of the date- and time-stamp data from the videos played during the suppression hearing.  Claims 3(c)–(d), 5(a)–(d), 6, and 8 all present arguments that seek *habeas* relief based on these contentions.

Third, Petitioner contends that he could not see the court's laptop computer screen when the surveillance videos were played during the suppression hearing.  Claims 2, 3(i), and 7(a)–(b) seek *habeas* relief based on this episode.

Fourth, Petitioner maintains that Gorr lacked probable cause to arrest him for the traffic offense because Gorr had no evidence that Petitioner actually drove on a public road.  Claim 3(h) raises an ineffective assistance of trial counsel argument based on this contention.

Petitioner's remaining arguments contend that trial counsel was ineffective for providing incorrect legal advice and for submitting a poorly drafted and reasoned brief in support of his motion to suppress (Claims 3(e)–(f)).

As discussed below, each of these claims (indeed, all of Petitioner's claims except for Claims 4 and 7(d)–(g)) concern events that occurred, or that Petitioner was or should have been aware of, at the time he entered a constitutionally valid guilty plea.  I recommend that these claims be denied on the ground that they are not cognizable upon federal *habeas* review in light of this guilty plea.  To the extent that this Court finds any claim not waived by the plea, I recommend that, in the alternative, the claims be denied as either procedurally defaulted, or because the state court's denial was neither contrary to, nor an unreasonable application of, clearly established federal law.[29]

---

[29] As discussed below, I recommend that Petitioner's claims concerning events that occurred after he entered his guilty plea be denied as either procedurally barred or otherwise plainly meritless (Claims 4 and 7(d)–(g)).  (See infra Section III(B)(3).)

     **i.**      **The Claims Are Not Cognizable Upon Federal *Habeas* Review Because Petitioner's Guilty Plea Was Knowingly And Voluntarily Entered**

The claims at issue here must be denied because they are not cognizable upon federal *habeas* review.  It is well-settled that "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996); see also United States v. Garcia, 339 F.3d 116, 117 (2d Cir. 2003) (per curiam) (citations omitted) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."); Whitehead v. Senkowski, 943 F.2d 230, 233 (2d Cir. 1991) (citation omitted) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea.").  As the Supreme Court has explained, this is because:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267 (1973).  This is because "[t]he focus of a federal habeas inquiry in a case involving a guilty plea is the voluntariness of the plea, not the existence . . . of an antecedent constitutional infirmity." Rodriguez v. Conway, No. 07 Civ. 9863(JSR)(AJP), 2009 WL 636503, at *19 (S.D.N.Y. Mar. 13, 2009) (internal quotation marks and citation omitted); see also, e.g., id. (collecting cases).[30]  "[A] guilty plea does not 'waive' constitutional challenges so much as it conclusively resolves the question of factual guilt supporting the

---

    [30] Copies of unreported cases cited herein will be mailed to Petitioner as a *pro se* litigant. See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a

non-issue[.]"  United States v. Gregg, 463 F.3d 160, 164 (2d Cir. 2006) (per curiam).  As the

Court has explained,

> [A] counseled plea of guilty is an admission of factual guilt so reliable that, where
> voluntary and intelligent, it quite validly removes the issue of factual guilt from the
> case.  In most cases, factual guilt is a sufficient basis for the State's imposition of
> punishment.  A guilty plea, therefore, simply renders irrelevant those constitutional
> violations not logically inconsistent with the valid establishment of factual guilt and
> which do not stand in the way of conviction if factual guilt is validly established.

Menna v. New York, 423 U.S. 61, 62 n.2 (1975) (per curiam).

Instead, the defendant "may only attack the voluntary and intelligent character of the

guilty plea."  Tollett, 411 U.S. at 267.  Accordingly, "the issue [is] not the merits of these [pre-

plea] constitutional claims as such, but rather whether the guilty plea had been made intelligently

and voluntarily."  Id.  at 265.

Here, the record of Petitioner's plea allocution demonstrates that his plea was both

knowingly and voluntarily entered.  See United States v. Foster, No. 06-4871-cr(L), 2008 WL

162845, at *1 (2d Cir. Jan. 18, 2008) (quoting Willbright v. Smith, 745 F.2d 779, 780 (2d Cir.

1984) (per curiam)) (although "'due process does not mandate a factual basis inquiry [into the

charged conduct] by state courts[,] . . . [a] factual basis inquiry . . . is . . . one way of satisfying

the constitutional requirement that a plea be voluntary and intelligent'").  "A plea is deemed

'intelligent' if the accused had the advice of counsel and understood the consequences of his

plea, even if only in a fairly rudimentary way . . . ."  Miller v. Angliker, 848 F.2d 1312, 1320 (2d

Cir. 1988).  Here, Petitioner stated on the record that he: understood what was happening at the

proceeding, (Ex. V, at 5); understood the charges alleged in the indictment, (id. at 5-6);

understood the terms of the plea bargain, (id. at 6); was willing to plead guilty in accordance

with the terms of the plea bargain, (id. at 7); discussed the proposed plea bargain with his attorney and his attorney answered all of his questions; (id.); was satisfied with the services of his attorney, (id.); and understood the constitutional rights he would be waiving by pleading guilty, including the right to a public trial, the right to have the prosecution prove their case beyond a reasonable doubt, the right to a jury trial, the right to confront and cross-examine witnesses (including the "right to challenge the conduct of police officers in connection with obtaining evidence"), the right to present a defense, the right to remain silent, and the right to appeal his conviction, (id. at 10-11).  Petitioner's "statements at [his] plea allocution carry a strong presumption of veracity." United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).  Accordingly, Petitioner's statements establish that he was satisfied with his attorney's performance and advice and that he understood the consequences of his guilty plea.  The plea was therefore knowingly entered.

A plea "is deemed 'voluntary' if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" Miller, 848 F.2d at 1320.  Here, Petitioner stated at his allocution that he: was not forced in anyway to plead guilty by another person, (Ex. V, at 8); agreed to the terms of the plea agreement out of his own free will, (id. at 13); and was not promised anything by anyone else, other than what was included in the terms of the plea bargain, (id. at 9-10). Accordingly, the record establishes that Petitioner entered his guilty plea voluntarily.

Petitioner's claims concerning matters that preceded this plea, or which Petitioner knew or should have known the factual bases of prior to entering this plea (all Claims except Claims 4 and 7(d)–(g)), must therefore be denied.

32

### ii. Petitioner's Constitutionally Valid Guilty Plea Waives His <u>Brady</u> Claims As Well (Claims 1 and 5)

Petitioner cannot bypass the bar to *habeas corpus* relief on his pre-guilty plea claims by pointing to allegedly undisclosed impeachment evidence under <u>Brady</u>.  As noted above, Petitioner's guilty plea waived all claims concerning events that occurred prior the entry of his plea.  This waiver includes <u>Brady</u> claims that concern allegedly undisclosed impeachment material.  <u>See, e.g.</u>, <u>Gantt v. Martuscello</u>, No. 12 Civ. 657(MAD)(CFH), 2014 WL 112359, at *3, 15 (N.D.N.Y. Jan. 10, 2014) (petitioner waived <u>Brady</u> claims by pleading guilty); <u>Rought v. Stallone</u>, No. 12 Civ. 622(JKS), 2014 WL 98702, at *14 (N.D.N.Y. Jan. 9, 2014) ("To the extent [petitioner]'s <u>Brady</u> claim involves impeachment evidence, it is foreclosed by his guilty plea."); <u>Tarafa v. Artus</u>, No. 10 Civ. 3870(AJN)(HBP), 2013 WL 245786, at *2 (S.D.N.Y. Jan. 23, 2013) (petitioner's contention that undisclosed impeachment material entitled him to relief from his guilty plea was "meritless"); <u>but see</u> <u>Hill v. West</u>, 599 F. Supp. 2d 371, 388 n.3 (W.D.N.Y. 2009) (collecting cases and stating that courts within this Circuit disagree as to whether a <u>Brady</u> claim may survive a guilty plea).

All of Petitioner's <u>Brady</u> claims concern allegedly undisclosed impeachment evidence. Yet the Supreme Court has made it clear that "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." <u>United States v. Ruiz</u>, 536 U.S. 622, 633 (2002).

> In [<u>Ruiz</u>], the Supreme Court reaffirmed its earlier holding that a defendant is entitled to information necessary to ensure that his plea is voluntary, and that any waiver of his rights are made "knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences."  Nevertheless, because "impeachment information is special in relation to the *fairness of a trial*, not in respect to whether a plea is *voluntary* (knowing, intelligent, and sufficient[ly] aware,)," the Supreme Court held that the failure to disclose such information prior to a guilty plea does not violate the Due Process Clause.  While the Supreme Court

> acknowledged that "the more information the defendant has, the more aware he is
> of the likely consequences of a plea, waiver, or decision, and the wiser that decision
> will likely be," it held that "the Constitution does not require the prosecutor to share
> all useful information with the defendant."

Friedman v. Rehal, 618 F.3d 142, 153 (2d Cir. 2010) (quoting Ruiz, 536 U.S. at 629) (emphasis

in original).  Here, Petitioner clearly understood the consequences of his plea and was able to

weigh his options rationally.  That Petitioner now contends that his decision would have been

better informed had certain evidence that may have affected Gorr's credibility as a witness been

disclosed to him does not affect the constitutional validity of his plea.  Accordingly, "[t]o the

extent petitioner claims he is entitled to relief from his guilty plea because he was not advised of

the information that allegedly impeached his accusers, the claim is meritless."  Tarafa, 2013 WL

245786, at *2 (citing Ruiz, 536 U.S. at 633); see also, e.g., Powell v. Graham, No. 10 Civ.

1961JJFB), 2013 WL 37565, at *15 (E.D.N.Y. Jan. 3, 2013) (noting same); Dolney v. United

States, No. 07 Cr. 4040(NGG), 2011 WL 73076, at *10 (E.D.N.Y. Jan. 10, 2011) (noting same);

Manzullo v. People of N.Y.S., No. 07 Civ. 744(SJF), 2010 WL 1292302, at *6 (E.D.N.Y. Mar.

29, 2010) (Brady claim based on failure to disclose prior to entry of guilty plea evidence that

"would not tend to exculpate [petitioner], but merely provide ammunition for impeachment of

the prosecution's witness," "has no merit," where the record of the plea colloquy revealed

petitioner understood "what he was pleading guilty to" and "underst[oo]d . . . the consequences

of that plea"); Garner v. Superintendent of Upstate Corr. Facility, No. 01 Civ. 501(LEK)(DEP),

2007 WL 2846907, at *26-27 (N.D.N.Y. Sept. 26, 2007) (Brady claim based on non-disclosure

of impeachment evidence "lack[s] merit" where petitioner pled guilty, did not proceed to trial,

and never claimed evidence would show factual innocence).  The claims must be denied.

a.   ***Even If The Allegedly Undisclosed Impeachment Material Did Affect The Constitutional Validity Of Petitioner's Guilty Plea, The <u>Brady</u> Claims Must Still Be Denied As Procedurally Barred***

Even if the constitutional validity of Petitioner's guilty plea was affected by the allegedly undisclosed impeachment material identified by Petitioner, his <u>Brady</u> claims must still be denied. The claims are procedurally barred from *habeas* review because the state courts relied upon independent and adequate state procedural rules to deny them, and Petitioner cannot circumvent his procedural defaults to permit this Court to review those claims.

First, the Third Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claims 1 and 5(a)–(c). (Exs. SSS-TTT); <u>Hayes</u>, 489 N.Y.S.2d at 228; <u>see</u> <u>Ylst</u>, 501 U.S. at 803. It is clear that the court actually relied upon New York State's contemporaneous objection rule to deny these claims because it "explicitly invoke[d]" the rule "as a separate basis" for its denial of Petitioner's <u>Brady</u> claims.[31] <u>Harris</u>, 489 U.S. at 264 n.10. This constitutes an independent ground for the court's denial of those claims. <u>E.g.</u>, <u>id.</u> at 265. Under New York's contemporaneous objection rule, "if a defendant becomes

---

[31] Specifically, the Third Department held that "defendant's allegation that exculpatory evidence was improperly withheld from him in violation of <u>Brady</u> . . . is not preserved for our review," and cited to <u>People v. Kearney</u>, 833 N.Y.S.2d 734 (App. Div. 3d Dep't 2007). <u>Hayes</u>, 896 N.Y.S.2d at 228. <u>Kearney</u>, in turn, cited to N.Y. Crim. Proc. Law § 470.05(2) to deny a defendant's <u>Brady</u> claim as unpreserved for appellate review. That statute provides that,

> For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same.

§ 470.05(2). This procedural rule thus requires that "an objection to a ruling or instruction of a criminal court . . . be raised contemporaneously with the challenged ruling or instruction in order to preserve the objection for appellate review." <u>Green v. Travis</u>, 414 F.3d 288, 294 (2d Cir. 2005) (citing <u>People v. Jones</u>, 440 N.Y.S.2d 248, 254 (App. Div. 2d Dep't 1981)).

aware of a potential <u>Brady</u> violation prior to the verdict in his criminal trial, he must preserve the issue by registering an objection in the trial court or attempting to use the belatedly disclosed evidence in some way at trial." <u>Tobias v. Portuondo</u>, 367 F. Supp. 2d 384, 389 (W.D.N.Y. 2004). It is well-settled that "New York courts routinely and regularly use the contemporaneous objection rule as a basis for denying as unpreserved <u>Brady</u> claims of which defendants became aware of prior to their verdicts." <u>Id.</u> In Claims 1 and 5(a)–(c), Petitioner contends that the prosecutor violated <u>Brady</u> by failing to produce additional surveillance videos and by failing to alert the defense to the nature of Gorr's allegedly perjured testimony. However, Petitioner was, or should have been, aware of the existence of this alleged <u>Brady</u> material prior to his sentencing. Prior to sentencing, Petitioner could have made the same arguments then as he does now and alleged that additional surveillance videos must have existed that captured those events.[32] Additionally, Petitioner should have known at the time of the suppression hearing whatever he knows now concerning whether Gorr testified falsely about events which Petitioner had personal knowledge of, including which credit cards he used, his entry and exit of the store, the clothes he wore, and so forth. (<u>E.g.</u>, Exs. X, FF.) Accordingly, the state court's reliance upon the contemporaneous objection rule also constitutes an adequate ground for the denial of Petitioner's claims, which now precludes them from federal *habeas* review. <u>See</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72, 86 (1977) (contemporaneous objection rule constitutes adequate procedural ground for dismissal); <u>Bossett v. Walker</u>, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (same); <u>Tobias</u>, 367 F. Supp. 2d at 389 (contemporaneous objection rule constitutes adequate procedural bar to <u>Brady</u> claim); <u>Ranta v. Bennett</u>, No. 97 Civ. 2169 (ERK)(JMA), 2000 WL 1100082, at *29-35

---

[32] As discussed further below, Petitioner has made no showing that any additional videos actually existed, or were ever in the State's possession. (<u>See</u> *infra* n.34.)

36

(E.D.N.Y. May 23, 2000) (collecting cases and finding contemporaneous objection rule constitutes adequate procedural bar to <u>Brady</u> claims on <em>habeas</em> review).  Petitioner does not assert cause and prejudice, nor allege a resulting fundamental miscarriage of justice, that would permit this Court to circumvent his procedural default and review the merits of these claims. <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995); <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989).  Claims 1, and 5(a)–(c) must therefore be denied on this basis a well.

Second, the trial court's decision on Petitioner's third § 440.10 motion represents the last-reasoned state court decision to address Claim 5(d).  <u>See Ylst</u>, 501 U.S. at 803.  It is clear that the court denied this <u>Brady</u> claim on the ground that, by agreeing to plead guilty, Petitioner waived his right to seek review of such a claim.[33]  It is well-established that in New York State, the practice of allowing defendants to plead guilty in exchange for a waiver of appellate review constitutes an independent and adequate ground for the denial of claims.  <u>See, e.g.</u>, <u>Burvick v. Brown</u>, No. 10 Civ. 5597(JFB), 2013 WL 3441176, at *6 (E.D.N.Y. July 9, 2013) (collecting cases and finding that "[f]ederal courts have held that [the] New York law allowing defendants to waive their right to appeal as part of a plea agreement, as long as the waiver is made voluntarily and is knowing and intelligent, is an adequate and independent state ground that bars habeas review, and this Court agrees with those decisions"); <u>Philips v. Brown</u>, Nos. 08 Civ. 2625(FB), 08 Civ. 2626(FB), 2011 WL 1984520, at *7 (E.D.N.Y. May 20, 2011) (state court's reliance on defendant's guilty plea as having waived <u>Brady</u> claim "does not provide a basis for

---

[33] Specifically, the court held that, to the extent Petitioner's claim "is premised on constitutional . . . violations," specifically, "that the prosecutor failed to correct detective Gorr's allegedly false testimony and that the notes Detective Gorr took constitute <u>Brady</u> material [that] the People failed to disclose," "[b]y pleading guilty, . . . [Petitioner] forfeited his right to seek review of any alleged . . . <u>Brady</u> violation," and "[t]hus, [Petitioner]'s <u>Brady</u> claim is not subject to review."  (Ex. DDDDD, at 4.)

habeas relief").  Petitioner does not assert cause and prejudice, nor allege a resulting

fundamental miscarriage of justice, that would permit this Court to circumvent his procedural

default and review the merits of the claim.  Schlup, 513 U.S. at 324; Harris, 489 U.S. at 262.

Accordingly, Claim 5(d) must be denied on this basis as well.[34]

----

[34] In any event, even if the state courts' reliance upon these state procedural rules did not constitute adequate procedural grounds that preclude federal *habeas* review, it is clear that, upon *de novo* review, Petitioner's Brady claims lack merit and should therefore be denied.  See Cotto, 331 F.3d at 230 (quoting Aparico v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001)) ("'If a state court has not adjudicated [a federal] claim on the merits, [courts] apply the pre-AEDPA standards, and review *de novo* the state court disposition of the petitioner's federal constitutional claims.'").

There are three elements to a Brady claim: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  Here, Petitioner cannot establish the second or third prongs.

Under the second prong, Petitioner must show that the evidence actually existed but was withheld from him by the State.  Apart from his conclusory speculation, Petitioner offers nothing to show that additional surveillance videos from Wal-Mart ever existed or were in the possession or control of the State at any point.  Petitioner's conclusory assertion that an employee of Wal-Mart told a family member that videos are retained for two years–even if true–is still insufficient to show that law enforcement or the prosecution ever reviewed such videos or had copies of them in their possession.  (See, e.g., Addendum to Pet., at 23; see also, e.g., Reply Traverse, at 23 (unpaginated); Ex. SSS, at 15.)  Similarly, the notes taken by Gorr are undated and Respondent contends, *inter alia*, that they were prepared *after* the suppression hearing concluded in anticipation of trial.  (Ex. AAAAA ¶ 62; see Ex. YYYY, at Ex. "H.")  Petitioner's mere speculative assertions to the contrary are, without more, insufficient to establish a violation of Brady.  See, e.g., Visich v. Walsh, No. 10 Civ. 4160(ER)(PED), 2013 WL 3388953, at *16 (S.D.N.Y. July 3, 2013) (collecting cases and finding that, where a petitioner has no personal knowledge concerning allegedly undisclosed Brady material, any unsupported speculation that the evidence existed at the time of the prosecution "is insufficient to warrant *habeas* relief"); Gonzalez v. Ercole, No. 08 Civ. 403(CS)(PED), 2011 WL 5924443, at *22 (S.D.N.Y. Sept. 22, 2011) (quoting Green v. Walsh, No. 03 Civ. 908(GBD)(DCF), 2006 WL 2389306, at *19 (S.D.N.Y. Aug. 17, 2006)) ("'[i]n a habeas proceeding, it is the petitioner's burden to demonstrate that the [Brady] evidence in question actually existed at the time of trial, and was withheld from production'"); Mercado v. Lempke, No. 07 Civ. 9865(VB)(PED), 2011 WL 5223604, at *17 (S.D.N.Y. July 25, 2011) (collecting cases and noting same).  Accordingly, Petitioner fails to establish the second prong of Brady.

Under the third prong of Brady, prejudice will only be shown where the undisclosed evidence is "material."  See, e.g., Boyette v. Lefevre, 246 F.3d 76, 91-92 (2d Cir. 2001) (citing United States v. Bagley, 473 U.S. 667, 682 (1985)).  "Undisclosed 'evidence is material only if

there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" United States v. Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting Bagley, 473 U.S. at 682). "A 'reasonable probability' is 'a probability sufficient to undermine confidence in the outcome' of the case, hence, the undisclosed evidence will be deemed material only if it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Id. (quoting Bagley, 473 U.S. at 682 and Kyles v. Whitley, 514 U.S. 419, 435 (1995)). Where a petitioner has pled guilty, "[t]o prove that the Brady violation was material, [petitioner] must demonstrate that 'there is a reasonable probability that but for the failure to produce' the [evidence], he 'would not have entered the plea but instead would have insisted on going to trial.'" United States v. Danzi, 726 F. Supp. 2d 120, 131 (2d Cir. 2010) (quoting United States v. Persico, 164 F.3d 796, 804-05 (2d Cir. 1999)). However, where the allegedly undisclosed material is not exculpatory, but rather impeachment evidence, that evidence "'is *not* material [for Brady purposes], and thus a new trial is *not* required when the suppressed impeachment evidence merely furnishes an additional basis on which to impeach a witness whose credibility has already been shown to be questionable.'" Mack v. Conway, 476 F. App'x 873, 876 (2d Cir. 2012) (quoting United States v. Wong, 78 F.3d 73, 79 (2d Cir. 1996)) (emphasis and alterations in original).

Petitioner contends that the undisclosed material is relevant for impeachment purposes only. Accordingly, the evidence is not "material" for purposes of Brady. In any event, even considering all of the information that Petitioner maintains was withheld from him, falsely testified about, or otherwise manipulated, this Court's confidence in the outcome of the proceeding is simply not affected by its non-disclosure. First, Petitioner's reliance on a portion of Gorr's notes which reads: "2PM," and "View tape. Check for other suspects (Mark)?," does not constitute material information. (Ex. YYYY ¶ 15.) The entry does not suggest that another individual committed the crimes that Petitioner pled guilty to. Nor does it state, as Petitioner contends that it does, that Gorr lied when he testified at the suppression hearing that it was another officer who went inside the store to have the fictitious "Mark" paged. The entry does not indicate whether it was the author, or another officer, who checked inside the store for other suspects. Second, Petitioner's reliance on a portion of the notes which reads: "10.27 run by Det Starner" at 1:40 p.m. does not constitute material information. The time when law enforcement ran a check of Petitioner's license number does not show that Petitioner did not commit the crimes he pled guilty to. Nor does it suggest that Gorr lied at all during his suppression hearing testimony. Petitioner contends only that, had this information been disclosed, he "would have used [it] as a basis for exploratory questions during the suppression hearing." (Id. ¶¶ 16-17.) This is insufficient to establish that the information is material for purposes of Brady. Third, the portion of the notes that states that another officer "remained" with Petitioner while Gorr went inside the store does not, contrary to Petitioner's contention, show that Petitioner was "being held against [his] will." (Id. ¶¶ 19-20.) Fourth, Petitioner's mere contention that Gorr's credibility as a witness dissipated after he testified that he did not take any notes—when he actually had—is simply so minor that its disclosure would likely have little to no effect on the outcome of the proceeding. Again, as noted above, Petitioner cannot show that the notes were prepared during the Gorr's investigation of the case, or at some point thereafter in preparation for trial.

### iii. Petitioner's Constitutionally Valid Guilty Plea Waives His Ineffective Assistance Of Trial Counsel Claims As Well (Claim 3)

As was the case with the <u>Brady</u> claims, Petitioner cannot bypass the bar to *habeas corpus* relief by raising ineffective assistance of trial counsel claims. As discussed above, Petitioner's guilty plea was valid and it waived claims involving events that occurred prior to its entry. This waiver includes ineffective assistance of counsel claims concerning events that Petitioner knew or should have known about, or that occurred prior to, the entry of his guilty plea that did not affect the voluntariness of the plea. <u>See, e.g.</u>, <u>Aladino v. United States</u>, No. 09 Civ. 926(CBA), 2012 WL 3531910, at *10 (E.D.N.Y. Aug. 15, 2012) (quoting <u>Coffin</u>, 76 F.3d at 497-98) (citations omitted and alterations in original) ("'A defendant who pleads guilty

---

In addition, Petitioner admitted during his plea allocution that he possessed several credit cards that contained his name and the identity information of others, and that he used those cards to purchase items from Wal-Mart. Petitioner has never disputed these facts or otherwise maintained that he was not at the store in question on that date or time with the falsified credit cards. Petitioner's fiancée also informed police that Petitioner had left their house in her vehicle in order to drive to Wal-Mart, and signed a consent form for the search of her vehicle. The police recovered incriminating evidence against Petitioner from the vehicle, which Petitioner does not dispute that he possessed. Even if the surveillance videos played during Gorr's testimony did not display, for instance, the time or date of Petitioner's arrival into the parking lot, or show Petitioner driving his vehicle on a public highway, it is a reasonable inference that Petitioner drove to the store.

Significantly, Petitioner does not claim he is innocent of any of the offenses. Indeed, Petitioner has acknowledged his guilt in this Court:

| | |
|---|---|
| THE COURT: | Did you tell the judge the truth when you told him you were guilty of the six counts? |
| MR. HAYES: | My guilt or innocent, I was facing a whole lot of time, your Honor, so I did what I felt at that time was best for me. |
| THE COURT: | Is that a yes or a no? |
| MR. HAYES: | Yes. |

(Ex. VVVV, at 13.) Accordingly, taken as a whole, the allegedly undisclosed evidence is simply not significant enough to provide any reasonable probability that, had it been disclosed, the result of the proceeding would have been different.

40

unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' This bar applies as well to 'ineffective assistance claims relating to events prior to the guilty plea.'"); Gathers v. New York, No. 11 Civ. 1684(JG), 2012 WL 71844, at *6 (E.D.N.Y. Jan. 10, 2012) ("claim[s] of ineffective assistance of counsel must be evaluated in light of the fact that [the petitioner] pleaded guilty instead of proceeding to trial"); id. at *7 (citing United States v. Torres, 129 F.3d 710, 715-16 (2d Cir. 1997), Coffin, 76 F.3d at 498, Mickens v. Brown, No. 05 Civ. 6117(JS), 2009 WL 3756646, at *3 (E.D.N.Y. Nov. 4, 2009), and Vasquez v. Parrott, 397 F. Supp. 2d 452, 463 (S.D.N.Y. 2005)) ("as long [as] a guilty plea was made knowingly and voluntarily, any claims of ineffective assistance of counsel relating to events prior to the guilty plea cannot be asserted").

Here, Petitioner's ineffective assistance of trial counsel claims all relate to events that occurred, or that Petitioner knew or should have known about, prior to the entry of his guilty plea. As such, the claims are not cognizable on federal *habeas* review. See, e.g., Cobb v. Unger, No. 09 Civ. 491(MAT), 2013 WL 821179, at *5 (W.D.N.Y. Mar. 5, 2013) (petitioner's claims that he received ineffective assistance of counsel for counsel's pre-plea actions–including the failure to file pretrial motions, secure Brady material, or properly investigate–were barred from *habeas* review because the claims did not affect the voluntariness of petitioner's guilty plea); Burwell v. Perez, No. 10 Civ. 2560(CM)(FM), 2012 WL 1596685, at *6 (S.D.N.Y. May 3, 2012) (Report & Recommendation), adopted by 2012 WL 2188635 (S.D.N.Y. June 13, 2012) ("Because [petitioner's] guilty plea was voluntary and intelligent, [petitioner]'s ineffective assistance claim, which concerns only his counsel's pre-plea actions (or failures to act), fails to

state a violation of his constitutional rights that this Court can consider.").  Claim 3 must be denied.

> ### a.   *Even If Petitioner's Ineffective Assistance Of Trial Counsel Claims Were Not Waived By His Guilty Plea,* **Habeas** *Relief Is Still Not Warranted*

Even if Petitioner's guilty plea did not preclude federal *habeas* review of his ineffective assistance of trial counsel claims, those claims should still be denied.  The state courts' decisions denying those claims on the merits were neither contrary to, nor an unreasonable application of, clearly established federal law.  In addition, Petitioner's failure to raise certain claims in state court precludes this Court from addressing them upon federal *habeas* review.

> ### 1.   The State Court's Denial Of Claims 3(b) And 3(f) Was Neither Contrary To, Nor An Unreasonable Application Of, <u>Strickland</u>

The Third Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address certain ineffective assistance of trial counsel claims concerning matters based on the record (Claims 3(b) and 3(f) (arguing counsel erred by failing to effectively cross-examine Gorr and by filing a lackluster brief in support of the suppression motion)).  <u>See</u> <u>Ylst</u>, 501 U.S. at 803.  It is clear that the court denied these claims on the merits. <u>See</u> <u>Hayes</u>, 896 N.Y.S.2d at 227 (citation omitted) ("With respect to those matters on the record, considering the circumstances of this case, particularly the fact that counsel effectively made pretrial motions leading to the suppression of certain evidence and negotiated a very favorable plea agreement, we are satisfied that defendant received meaningful representation . . . .").  Accordingly, I address those arguments pursuant to AEDPA's deferential standard of review.

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his

defense." U.S. Const. Amend. VI.  The Supreme Court has construed this clause to afford

criminal defendants the right to the *effective* assistance of counsel.  See McMann v. Richardson,

397 U.S. 759, 771 n.14 (1970).  A *habeas* petitioner's ineffective assistance of counsel claim

will succeed on the merits if the petitioner proves (1) that counsel's representations "fell below

an objective standard of reasonableness," as measured under "prevailing professional norms,"

and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668,

688, 694 (1984).

 *Habeas* petitioners bear the burden of proving both prongs of the Strickland test.  He or

she must therefore prove that his or her attorney's actions were objectively unreasonable as well

as that he or she was prejudiced to the extent that there exists a reasonable probability that the

result of the proceeding would have been different.  Id. at 689, 693.  To show that an attorney's

conduct was unreasonable, the petitioner must overcome "a strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." Id. at 689.

Additionally, a "fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.

Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for

a court deciding an ineffective assistance claim . . . to address both components of the inquiry if

the defendant makes an insufficient showing on one." Id. at 697.

 In this case, even assuming that counsel's performance was deficient, Petitioner fails to

establish Strickland's second prong.  "To satisfy the second prong of Strickland in the context of

plea negotiations, the defendant must show that there is a reasonable probability that were it not

for counsel's errors, he would not have pled guilty and would have proceeded to trial." United States v. Arteca, 411 F.3d 315, 320 (2d Cir. 2005) (citing Hill v. Lockhart, 474 U.S. 52, 59 (1985)). Additionally, "'courts have recognized that a petitioner must provide some basis for concluding that the chance of acquittal or conviction of lesser charges was sufficiently high that the petitioner would have rationally chosen to take the risk of conviction and a longer sentence that accompanies a trial rather than accept the certainty of conviction and a generally lesser sentence that is entailed by a guilty plea.'" Morton v. Perez, No. 13 Civ. 3985(AT)(GWG), 2014 WL 407411, at *9 (S.D.N.Y. Feb. 4, 2014) (Report & Recommendation) (quoting Cuevas v. United States, Nos. 10 Civ. 5959(PAE)(GWG), 98 Civ. 1053(PAE), 2012 WL 3525425, at *9 (S.D.N.Y. Aug. 16, 2012) (Report & Recommendation), adopted by 2013 WL 655082 (S.D.N.Y. Feb. 22, 2013)); see id. (collecting cases). To determine whether a petitioner has made "an adequate showing of prejudice," the court must consider "the record as a whole." Arteca, 411 F.3d at 321.

The Court has reviewed the extensive record and notes that Petitioner asserted in a reply brief on direct appeal that, had he "not been duped and misled . . . he would have insisted on going to trial, knowing full well that if he were convicted then the conviction would be overturned on appeal." (Ex. YYY, at 1-2.) Despite Petitioner's confidence, this Court is not persuaded that such is the case. There is nothing in the record to suggest that Petitioner would have been acquitted or received a more lenient sentence if he proceeded to trial.

> [I]t is not enough that counsel's error "had some conceivable effect on the outcome of the proceeding[.] [as] virtually every act or omission of counsel would meet that test." Rather, a "reasonable probability" that the result of the proceeding would have been different means "a probability sufficient to undermine confidence in the outcome."

Rodriguez v. Bradt, No. 09 Civ. 10285(LTS)(DF), 2011 WL 6747470, at *9 (S.D.N.Y. Sept. 14,

2011) (quoting Strickland, 466 U.S. at 693-94) (alterations in original).  As discussed above, this Court's confidence in the outcome of the proceeding is not affected by counsel's failure to highlight inconsistencies in Gorr's testimony.  Nor is this Court's confidence affected by considering the additional arguments Petitioner maintains should have been included in counsel's post-suppression hearing memorandum.

In any event, the record reflects that Petitioner received a favorable plea bargain in exchange for his guilty plea.  The 25 surviving counts of the indictment at the time of Petitioner's plea included 9 counts of criminal possession of a forged instrument in the second degree, in violation of N.Y. Penal Law § 170.25; 7 counts of unlawful possession of personal identification information in the third degree, in violation of N.Y. Penal Law § 190.81; 1 count of grand larceny in the fourth degree, in violation of N.Y. Penal Law § 155.30(1); 1 count of criminal possession of stolen property in the third degree, in violation of N.Y. Penal Law § 165.50; 2 counts of identity theft in the third degree, in violation of N.Y. Penal Law § 190.78(1); 3 counts of identity theft in the second degree, in violation of N.Y. Penal Law § 190.79(1); 1 count of scheme to defraud in the first degree, in violation of N.Y. Penal Law § 190.65(1)(a); and 1 count of aggravated unlicensed operation of a motor vehicle in the second degree, in violation of N.Y. Vehicle & Traffic Law § 511(2)(a)(iv).  Petitioner was allowed to plead guilty, in full satisfaction of the indictment, to only 6 of those 25 counts, and to admit that he possessed only three forged credit cards and used another person's card to purchase items from Wal-Mart.[35]

---

[35] Specifically, Petitioner pled guilty to 3 (out of the 9) counts of criminal possession of a forged instrument in the second degree (N.Y. Penal Law § 170.25); 1 count of criminal possession of stolen property in the third degree (id. § 165.50); 1 count of scheme to defraud in the first degree (id. § 190.65(1)(a)); and 1 count (out of 3) of identity theft in the second degree, (id. § 190.79(1)).

Petitioner's aggregate sentence of 5½–11 years imprisonment is substantially less than what he faced if he proceeded to trial and was convicted, for example, of possessing more than three forged cards, and sentenced to consecutive terms on those counts. See N.Y. Penal Law § 170.25 (criminal possession of a forged instrument in the second degree is a class D felony); § 70.00(1), (2)(d) (indeterminate sentence of no more than 7 years may be imposed for class D felony offense); § 70.25 (permitting consecutive sentences for offenses committed through multiple acts).

Accordingly, because Petitioner has not established Strickland's second prong, the state court's denial of these claims was neither contrary to, nor an unreasonable application of, clearly established federal law. Claims 3(b) and 3(f) should therefore be denied on this basis.

### 2.    Claims 3(h)–(i) Remain Unexhausted But Procedurally Barred

Petitioner raises two ineffective assistance of counsel claims in his *habeas* petition concerning record-based matters that were not raised on direct appeal. In Claims 3(h) and (i), Petitioner argues that counsel was ineffective for failing to argue that probable cause was lacking for his arrest for the traffic offense because there was no evidence to show that he drove a vehicle on a public highway, as opposed a store parking lot; and for failing to object to the position of the laptop during the suppression hearing. Petitioner did not raise these claims on direct appeal.

Instead, on direct appeal, Petitioner "call[ed] the Court's attention to the fact that he could not see the video clips as they were played during the suppression hearing," asserted that he "could not see the videos from his vantage point in the jury box," and noted that "[t]he record is silent because [Petitioner] reasonably expected [his attorney] to preserve and protect his

46

interests." (Ex. SSS, at 10.)  However, Petitioner alluded to this event in a section that argued

that the prosecutor committed misconduct by knowingly allowing Gorr to testify falsely.

Petitioner did not argue in this section that his attorney's conduct was deficient for failing to

object to the position of the laptop.  Similarly, Petitioner maintained on direct appeal that his

Fourth Amendment rights were violated.  However, he did not also contend that counsel was

ineffective for failing to argue that there was no probable cause for Petitioner's traffic arrest

because there was no evidence showing that Petitioner drove on a public road.  (C.f., e.g., Ex.

SSS, at 31 (asserting that Petitioner's arrest for the traffic offense was without probable cause,

but *not* arguing that counsel was deficient for failing to argue this point).)  Petitioner's other state

court applications also fail to allege these specific claims.  (Exs. FF (arguing, *inter alia*, that

counsel was ineffective for failing to argue that probable cause for the traffic offense was lacking

because the surveillance videos do not show whether Petitioner was in the driver's seat of the

vehicle); NN (arguing, *inter alia*, that counsel was ineffective for failing to argue that Petitioner

was searched without probable cause, and for failing to argue that probable cause for the traffic

offense was lacking because the surveillance videos do not show whether Petitioner was in the

driver's seat of the vehicle); CCC (arguing, *inter alia*, that counsel was ineffective for failing to

argue that probable cause was lacking because the surveillance videos showed Petitioner at a

Wal-Mart in Dutchess County, not Sullivan County, and because the surveillance videos were

not date- or time-stamped); NNN, at Ex. H (noting that Petitioner could not see the laptop

computer, but *not* arguing that counsel was deficient for failing to object on this basis, or for any

other reason); YYYY (arguing that the prosecutor erred by failing to disclose Gorr's

investigative notes).)

  These claims may be deemed exhausted because Petitioner no longer has remedies

available in the state courts to raise and exhaust such record-based claims.  N.Y. Crim. Proc. Law § 440.10(2)(c); Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997).  Petitioner does not assert cause and prejudice, nor a fundamental miscarriage of justice, that would enable this Court to circumvent his default and review the merits of any such ineffective assistance of counsel claim.  Schlup, 513 U.S. at 324; Harris, 489 U.S. at 262.

Accordingly, Claims 3(h) and (i) must be denied on this basis.

### 3.   The State Courts' Denials of Claims 3(a), 3(c)–(e), And 3(g) Were Not Contrary To, Nor An Unreasonable Application Of, Strickland

The trial court's decision on Petitioner's first § 440.10 motion represents the last-reasoned state court decision to address Claims 3(c)–(e) (arguing counsel unreasonably failed to obtain additional surveillance videos and law enforcement records, and that counsel deprived Petitioner of his right to testify at the suppression hearing after providing him with erroneous legal advice).  (Ex. NN); see Ylst, 501 U.S. at 803.  It is clear that the state court denied these claims "on the basis that [Petitioner]'s allegations of ineffective assistance of counsel did not affect the plea bargaining process."  (Ex. RR, at 2-3.)  The trial court's decision on Petitioner's second § 440.10 motion represents the last-reasoned state court decision to address Claims 3(a) and (g) (arguing counsel failed to cross-examine Gorr about allegedly perjured testimony and argue that the prosecution failed to disclose evidence).  (Ex. CCC); see Ylst, 501 U.S. at 803.  It is clear that the court denied these claims on the same basis as it denied Claims 3(c)–(e).  (Ex. GGG, at 3-4.)

The courts' decisions were neither contrary to, nor an unreasonable application of, Strickland.  As discussed above, Petitioner cannot establish Strickland's second prong and show that there exists a reasonable probability that, were it not for counsel's errors, he would not have

48

pled guilty.  There is nothing in the record to suggest that Petitioner would have been acquitted

or received a more lenient sentence had he proceeded to trial.  In addition, this Court's

confidence in the outcome of the proceeding is not affected by what the additional surveillance

videos would have shown or the testimony Petitioner contends he would have given at the

suppression hearing.  Petitioner admitted during his plea allocution that he possessed several

credit cards that contained his name and the identity information of others, and that he used those

cards to purchase items from Wal-Mart.  Petitioner has never disputed these facts or otherwise

maintained that he was not at the store in question on that date or time with the falsified credit

cards.  Significantly, Petitioner does not claim he is innocent of any of the offenses and in fact,

acknowledged his guilt in this Court.  (Ex. VVVV, at 13.)  Further, as discussed above,

Petitioner's Brady contentions lack merit.  Petitioner cannot show that counsel's failure to raise

meritless arguments affected the outcome of the proceeding.  See, e.g., United States v.

Regalado, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (per curiam) (internal quotation marks and

citation omitted) ("failure to make a meritless argument does not amount to ineffective

assistance"); United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) (citing Cuevas v.

Henderson, 801 F.2d 586, 592 (2d Cir. 1986) and United States v. Eltayib, 88 F.3d 157, 170 (2d

Cir. 1996)) (failure to raise futile objection does not constitute ineffective assistance under

Strickland); Stewart v. Greene, No. 05 Civ. 566(WHP)(THK), 2009 WL 4030833, at *21

(S.D.N.Y. Nov. 19, 2009) ("because these claims lack merit . . . , Petitioner cannot establish

prejudice resulting from their omission").  Finally, the record reflects that Petitioner received a

favorable plea bargain in exchange for his guilty plea.  His aggregate sentence of 5½–11 years

imprisonment is substantially less than what he faced if he proceeded to trial, was found guilty of

additional offenses, and sentenced to consecutive terms.

Accordingly, because Petitioner has not established <u>Strickland</u>'s second prong, the state court's denial of these claims were neither contrary to, nor an unreasonable application of, clearly established federal law.  Claims 3(a), (c)–(e), and (g) should therefore be denied on this basis.[36]

---

[36] Liberally reading Petitioner's submissions, <u>see</u> <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be liberally construed); <u>Graham v. Henderson</u>, 89 F.3d 75, 79 (2d Cir. 1996) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted 'to raise the strongest arguments that [it] suggest[s]'"), I note that the gravamen of Petitioner's numerous filings concerns neither <u>Brady</u>, nor allegations of ineffective assistance of counsel.  Rather, Petitioner's main contention–asserted *ad nauseam* throughout his materials–is that Gorr searched him and prevented him from leaving the Wal-Mart parking lot before he had probable cause to do so.  Yet Petitioner was aware of the essential facts concerning such events at the time of the suppression hearing and the entry of his guilty plea.  The issue of probable cause was also decided by the trial court after the suppression hearing.  To the extent Petitioner circuitously now seeks to challenge his conviction on Fourth Amendment grounds, his effort must fail.  It is well-established that such claims are barred from federal *habeas* review by application of the <u>Stone v. Powell</u> doctrine.

In <u>Powell</u>, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial." <u>Stone v. Powell</u>, 428 U.S. 465, 482 (1976); <u>see also, e.g.</u>, <u>Graham v. Costello</u>, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . .  [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]").  Accordingly, Fourth Amendment claims may not be reviewed by this Court unless one of two narrow exceptions apply: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." <u>Capellan v. Riley</u>, 975 F.2d 67, 70 (2d Cir. 1992).

Petitioner does not–nor could he–contend that New York failed to provide corrective procedure to redress any alleged Fourth Amendment claim.  Indeed, as the Second Circuit has noted, "the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq*. . . . , as being facially adequate." <u>Id.</u> at 70 n.1 (internal quotation marks and citation omitted).

Nor can Petitioner successfully argue that an unconscionable breakdown occurred.  "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into

the petitioner's claim." Smith v. Senkowski, No. 97 Civ. 1280, 1999 WL 138903, at *6 (E.D.N.Y. Mar. 10, 1999) (citing Capellan, 975 F.2d at 71). Where a petitioner was provided,

> [A]n opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief . . . [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim.

Graham, 299 F.3d at 134. Accordingly, "[t]he focus of the inquiry regarding whether there has been an 'unconscionable breakdown' must be on 'the existence and application of the corrective procedures themselves' rather than on the 'outcome resulting from the application of adequate state court corrective procedures.'" Parker v. Ercole, 582 F. Supp. 2d 273, 287 (N.D.N.Y. 2008) (quoting Capellan, 975 F.2d at 71).

Here, Petitioner moved pretrial to dismiss the indictment and to suppress evidence on the ground that he was arrested without probable cause. (Exs. J, M.) The court held pretrial hearings and denied the motion. (Exs. P–R, U.) Petitioner also presented a variation of this argument throughout his numerous state court post-conviction filings. However, "mere dissatisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred in the existing process in violation of the petitioner's Fourth Amendment rights under the Constitution." Cook v. Donnelly, No. 02 Civ. 6073(VEB), 2009 WL 909637, at *5 (W.D.N.Y. Mar. 31, 2009) (citing Capellan, 975 F.2d at 71). Moreover, even if Petitioner is correct that the trial court failed to consider relevant evidence on the surveillance videos after Petitioner brought it to the court's attention, Petitioner has not established that the Third Department similarly erred when Petitioner raised his concerns in his post-conviction filings. See, e.g., McClelland v. Kirkpatrick, 778 F. Supp.2d 316, 331 (W.D.N.Y. Apr. 21, 2011) (where petitioner presented issue on direct appeal, no unconscionable breakdown occurred despite petitioner's contention that trial court engaged in "erroneous fact-finding, incorrect[ly] appli[ed] . . . the law, and refus[ed] to consider the pertinent issues"); Munford v. Graham, No. 09 Civ. 7899(DLC)(AJP), 2010 WL 644435, at *17 (S.D.N.Y. Feb. 24, 2010) (collecting cases and noting no breakdown occurred even if trial court failed to make reasoned inquiry, because petitioner also "had a full and fair opportunity to litigate his Fourth Amendment claim on direct appeal"). Finally, any attempt by Petitioner's to "link" his Fourth Amendment claim to an unconscionable breakdown by arguing that counsel was ineffective for failing to discredit Gorr as a witness is unavailing. "[A]s a matter of law," "[i]neffective assistance of counsel does not constitute an unconscionable breakdown for the purposes of Stone v. Powell." Irizarry v. Ercole, No. 08 Civ. 5884(KMK), 2013 WL 139638, at *5 n.4 (S.D.N.Y. Jan. 11, 2013); see also, e.g., id. (quoting Shaw v. Scully, 654 F. Supp. 859, 865 (S.D.N.Y. 1987)) ("'the Court may not sidestep Stone v. Powell by equating ineffective assistance of counsel with unconscionable breakdown'"); id. (citing Garcia v. Bradt, No. 09 Civ. 7941(VB)(PED), 2012 WL 2426773, at *12 (S.D.N.Y. Jan. 24, 2012), adopted by 2012 WL 3027780 (S.D.N.Y. July 23, 2013)) (noting same); Parker, 582 F. Supp. 2d at 288 (collecting

3.     **Habeas** *Relief Is Not Warranted On Petitioner's Claims Concerning Matters That Occurred After The Entry Of His Guilty Plea (Claims 4, 7(d)–(g))*

Petitioner raises certain claims relating to events that occurred after he pled guilty. Specifically, Petitioner argues that his appellate counsel was ineffective (Claim 4) and that the trial court committed various errors subsequent to the time that Petitioner pled guilty (Claims 7(d)–(g)).

i.     **Petitioner's Ineffective Assistance of Appellate Counsel Claims Are Either Unexhausted But Procedurally Barred Or Otherwise Plainly Meritless (Claim 4)**

Petitioner contends in Claim 4 that his appellate counsel was ineffective for failing to raise certain arguments on direct appeal. The Third Department's written decision denying Petitioner's *error coram nobis* petition represents the last-reasoned state court decision to address Claim 4.  See Ylst, 501 U.S. at 803.  It is clear that the court summarily denied the claim.  (See Ex. TTTT.)  However, Petitioner failed seek leave to appeal this decision to the state's highest court.  (Dkts. 35, 38.[37])  Petitioner's failure to present this claim "in each appropriate state court . . . including a state supreme court with powers of discretionary review,"

_____

cases).
        Thus, under any scenario, Petitioner is not entitled to *habeas* relief with respect to his ineffective assistance claims.

[37] Petitioner bears the burden of establishing that his claim has been fully exhausted.  See Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991) (exhaustion requirement requires petitioner to "present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); see also, e.g., Santana v. Brown, No. 09 Civ. 5176(JPO), 2013 WL 2641460, at *5 (S.D.N.Y. June 12, 2013) (collecting cases and noting "[t]he petitioner bears the burden of demonstrating that his claims have been fully exhausted before being asserted on federal habeas").  In the absence of any documentary support, Petitioner's conclusory representation (Dkt. 37) that he sought leave to appeal from this decision is insufficient to carry that burden.

52

deems the claim unexhausted for purposes of federal *habeas* review.  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted); see N.Y. Crim. Proc. Law § 450.90(1) (providing for appeals from "an order granting or denying a motion to set aside an order of an intermediate appellate court on the ground of ineffective assistance or wrongful deprivation of appellate counsel"); Grey, 933 F.2d at 119 (exhaustion requirement requires petitioner to "present his federal constitutional claims to the highest court of the state before a federal court may consider the merits of the petition"); see also, e.g., Santana, 2013 WL 2641460, at *5 (collecting cases and noting "[t]he petitioner bears the burden of demonstrating that his claims have been fully exhausted before being asserted on federal habeas").

It is not clear whether Petitioner still has a state court remedy available in which to exhaust his ineffective assistance of appellate counsel claims.  See 28 U.S.C. § 2254(b); Reyes, 118 F.3d at 139; Grey, 933 F.2d at 120.  The decisions from district courts within this Circuit are inconsistent as to whether a petitioner may, and under what circumstances, file a second application for a writ of *error coram nobis* in New York State.  Compare, e.g., Ramirez v. Brown, No. 10 Civ. 2044(BMC), 2011 WL 1637497, at *4 n.2 (E.D.N.Y. Apr. 29, 2011) (citing N.Y. C.P.L.R. § 2221(e) and Green v. N.Y.C. Hous. Auth., 724 N.Y.S.2d 631, 632 (App. Div. 2d Dep't 2001)) (internal quotation marks omitted) (noting that "Petitioner will likely be procedurally barred from bringing [an ineffective assistance of appellate counsel] claim by a second writ of *error coram nobis* in state court since he does not base the claim upon any new facts not offered in [his] prior motion or demonstrate a change in the law that would change the prior determination; nor does he provide reasonable justification for the failure to present such facts in [his] prior motion."), with, e.g., Keating v. New York, 708 F. Supp. 2d 292, 300 (E.D.N.Y. 2010) (internal quotation marks omitted) (discussing People v. D'Alessandro, 13

53

N.Y.3d 216 (2009) and determining that "the statutory restrictions on successive § 440.10 motions do not apply to *coram nobis* petitions to the Appellate Division," but also noting that it is not clear whether D'Alessandro requires the Appellate Division to "*always* review the merits of a successive *coram nobis* petition," or whether it "must review the merits" only where the successive petition "raises much more substantial arguments than the prior petition"), and, e.g., Mosley v. Unger, No. 10 Civ. 478A, 2011 WL 7121177, at *3 (W.D.N.Y. Aug. 12, 2011) (citing D'Alessandro, 13 N.Y.3d at 221 and holding that "[a]lthough petitioner failed to raise this ineffective assistance claim in his first motion for a writ of error coram nobis, petitioner would not be barred from raising this 'new' claim in a subsequent motion to the Appellate Division"), and, e.g., Chu v. Artus, No. 07 Civ. 6684(RJS)(DF), 2011 WL 8202381, at *15-16 (S.D.N.Y. Aug. 9, 2011) (emphasis added) (noting "Petitioner *may* still be able to exhaust his additional claims through a second *coram nobis* petition" but declining to enter a stay of the *habeas* proceedings due to petitioner's failure to show good cause for failing to exhaust).

If Petitioner is precluded from raising his ineffective assistance of appellate counsel claims in a successive *coram nobis* petition, then this Court may now deem those claims exhausted, but procedurally barred. Reyes, 118 F.3d at 139. Petitioner has not asserted cause and prejudice, nor a resulting fundamental miscarriage of justice, that would permit this Court to circumvent his procedural default and review the merits of Claim 4. See Schlup, 513 U.S. at 324; Harris, 489 U.S. at 262. Under this scenario, Claim 4 must be denied.

However, if Petitioner is not precluded from raising his ineffective assistance of appellate counsel claims through a subsequent *coram nobis* petition, then this Court is now confronted with a "mixed" petition containing both exhausted and unexhausted claims. When confronted with such a petition, a district court has the following options: (1) it may stay the proceedings

and hold the petition in abeyance in order to permit the petitioner to return to state court and

exhaust the unexhausted claim(s); (2) it may permit the petitioner to amend the petition and

excise any unexhausted claim; (3) it may dismiss without prejudice the entire petition; or (4) it

may review each claim and dismiss the petition if the claims are plainly meritless.  See 28 U.S.C.

§ 2254(b)(2); Rhines v. Weber, 544 U.S. 269, 277-78 (2005); Zarvela v. Artuz, 254 F.3d 374,

378-82 (2d Cir. 2001); Reyes v. Morrissey, No. 07 Civ. 2539(LAP)(DF), 2010 WL 2034531, at

*9 (S.D.N.Y. Apr. 21, 2010).  Under this scenario, I respectfully recommend that the Court

exercise its discretion and deny Claim 4 as plainly meritless.  See Padilla v. Keane, 331 F. Supp.

2d 209, 216 (S.D.N.Y. 2004).

     In this case, Petitioner cannot establish the first prong of Strickland.[38]  It is well-

established that appellate counsel "does not have a duty to advance every nonfrivolous

argument."  Mayo, 13 F.3d at 533.  The failure to raise a legal argument on direct appeal will

constitute ineffective assistance only where the petitioner "shows that counsel omitted

significant and obvious issues while pursuing issues that were clearly and significantly weaker."

Id.  "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or

failed to raise the claim despite recognizing it, does not constitute . . . constitutionally deficient

[performance] under the test of Strickland," unless that claim was clearly stronger than the

claims that were raised.  Smith v. Murray, 477 U.S. 527, 535 (1986) (internal quotation marks

and citations omitted).  Indeed, the Supreme Court has recognized "the importance of

winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at

---

[38] Although the Strickland test was formulated in the context of evaluating a claim of
ineffective assistance of trial counsel, the same test is used with respect to claims alleging
ineffective assistance of appellate counsel.  See, e.g., Mayo v. Henderson, 13 F.3d 528, 533 (2d
Cir. 1994).

most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983).

Here, appellate counsel raised one issue on direct appeal and argued that the trial court's denial of Petitioner's motion to withdraw his guilty plea without first conducting an evidentiary hearing was in error. (See Ex. RRR.) This argument cannot be said to have been clearly or significantly weaker than the claims that Petitioner now maintains should have been raised. In particular, as noted above, Petitioner's guilty plea foreclosed relief for any alleged constitutional errors that occurred prior to the entry of his plea. Accordingly, Petitioner was required to first present, and then to succeed on, the claim that was advanced by appellate counsel, in order to successfully advance his other constitutional claims. Moreover, Petitioner cannot establish that appellate counsel was ineffective for failing to raise claims that Petitioner waived by virtue of his guilty plea. See, e.g., Fisher v. Superintendent, No. 12 Civ. 6703(JPO), 2014 WL 128015, at *22 (S.D.N.Y. Jan. 14, 2014) (appellate counsel has no duty to raise claim concerning event that occurred prior to entry of constitutionally valid guilty plea).

Petitioner also fails to establish the second prong of Strickland and show that he was prejudiced by his attorney's failure to raise on direct appeal the arguments that Petitioner *himself* raised in his supplemental *pro se* appellate brief. (See Exs. SSS, TTT, YYY); Hayes, 896 N.Y.S.2d at 227; see also, e.g., Liggan v. Senkowski, No. 11 Civ. 1951(RA)(AJP), 2013 WL 3853401, at *32 (S.D.N.Y. July 26, 2013) (Report & Recommendation) (collecting cases and finding no ineffective assistance of appellate counsel claim survives where plaintiff himself raised the claim through *pro se* supplemental submission).[39]

---

[39] By correspondence dated January 25, 2014–and more than two years after the petition was fully briefed–Petitioner submitted more than one hundred pages of additional material to the Court relating to a second *error coram nobis* petition that he recently filed in state court. (Dkt. 34.) Given the extraordinary passage of time since the *habeas* petition was fully submitted, and

Accordingly, because Petitioner can neither overcome his procedural default (if the claim is defaulted), nor establish that his claim is not plainly meritless (if it is not defaulted), Claim 4 should be denied.

### ii.   Petitioner's Claims Arguing Trial Court Error Are Unexhausted But Procedurally Barred (Claims 7(d)–(g))

In Claims 7(d)–(g), Petitioner argues that the trial court erred with respect to events that occurred after he pled guilty.  Specifically, he contends that the trial court violated his right to "due process" when it failed to: (d) assign new counsel after Petitioner's attorney withdrew; (e) order Petitioner's former attorney to send him the case file; (f) order Wal-Mart to produce surveillance videos after Petitioner made this request following his motion to withdraw his guilty plea; and (g) failed to order local law enforcement to produce certain records relating to the search of Petitioner's home after Petitioner made this request following his motion to withdraw

---

in the absence of any explicit request that the petition be amended to add these new claims, the undersigned has not construed Petitioner's submission as a motion to amend.  See Littlejohn v. Artuz, 271 F.3d 360, 363 (2d Cir. 2001) (per curiam) (leave to amend a *habeas* petition should be denied "in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive"); see also, e.g., Joseph v. LaValley, No. 12 Civ. 315(MAT), 2013 WL 3148320, at *8 (W.D.N.Y. June 19, 2013) (denying leave to amend *habeas* petition where the petitioner's "method of piecemeal submission" was found to be "unfair to the opposing party," which had already answered the original petition, and "a poor use of judicial resources" where the petitioner "has extensively litigated the issues underlying th[e] proposed new claim, [but] has offered no legitimate reason for his failure to raise [it] in his initial habeas petition and/or why he has waited until this late juncture to exhaust [it]"); see Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962).  Nonetheless, even if Petitioner's new claim–which argues that appellate counsel was ineffective for failing to raise a claim that the judge who presided over Petitioner's arraignment was biased–were considered, it must be denied.  Petitioner raised the bias claim himself in his first § 440.10 motion and the court denied the claim on the merits.  (Exs. KK, NN–RR.)  Accordingly, Petitioner cannot establish Strickland's second prong and show that, had appellate counsel raised the claim on direct appeal, the result of the appeal would have been different.

his guilty plea.[40]   Respondent contends that the arguments remain unexhausted.  (See Resp't's

Mem., at 14-18.)  Petitioner has not responded to this argument.  I agree with Respondent.

Petitioner presented the factual bases of Claims 7(d) and (e) in his first § 440.10 motion.

However, the legal bases for the claims were not fairly presented.  (See Ex. KK, at 13 (stating

that "on the basis of [the prosecutor]'s misrepresentations to the court regarding three attorneys

who had previously represented [Petitioner], [Petitioner] was not assigned counsel"); id. (stating

Petitioner "requested a copy of the entire case file" from his former attorney, but the attorney

"ignored [the] letter"); id. (stating Petitioner "sent the Court a letter seeking its intervention and

assistance" with obtaining his case file, but that the Court refused to respond to his request

because the letter was sent ex parte); Ex. NN (arguing Petitioner's attorney provided ineffective

assistance of counsel only).)  Petitioner never argued that the trial court erred by failing to assign

counsel immediately after Petitioner's attorney withdrew upon Petitioner's consent, nor did he

argue that the trial court erred in failing to issue an order that directed Petitioner's former

counsel to provide Petitioner with his case file.

Petitioner also argued on direct appeal that the *prosecutor* failed "to provide the defense

with video footage of the entire one-hour police encounter," in violation of Brady.  However, he

did not also argue that the *court* erred by failing to order Wal-Mart to produce the videos, nor did

he argue that the court erred by failing to order a subpoena for the police records, as he now

argues in Claims 7(f)–(g).  (Ex. SSS.)  Similarly, in Petitioner's first § 440.10 motion, he *stated*

only that he had requested the trial court order local law enforcement to produce records to him.

However, he did not state that the court denied his request or argue that the court's denial

_____

[40] As noted above, Petitioner thereafter retained new counsel, who represented Petitioner
on his motion to withdraw his guilty plea and at sentencing.

violated his federal due process rights.  (Ex. KK, at 14.)  Finally, Petitioner also noted in his

second state *habeas* petition that he had recently "submitted an application to the trial court

seeking a subpoena for the footage" of the entire encounter in the Wal-Mart parking lot.

However, he did not allege that the trial court had erred in denying his application–as Petitioner

admitted in that petition, the Court at that time had not yet taken any action on his request.  (Ex.

FF, at 8.)

Accordingly, Claims 7(d)–(g) were not fairly presented to any state court and therefore

remain unexhausted.  See Galdamez, 394 F.3d at 73.  However, these record-based claims may

now be deemed exhausted but procedurally barred because Petitioner no longer has remedies

available in the state courts in which to raise and exhaust them.  N.Y. Crim. Proc. Law §

440.10(2)(c).  Petitioner does not assert cause and prejudice, nor a resulting fundamental

miscarriage of justice, that would enable this Court to circumvent his procedural default and

review the merits of these claims.  Schlup, 513 U.S. at 324; Harris, 489 U.S. at 262.

Accordingly, Claims 7(d)–(g) must be denied.

## IV.  CONCLUSION

For the reasons set forth above, I conclude–and respectfully recommend that Your Honor

should conclude–that the petition should be **DENIED**.  Further, because reasonable jurists would

not find it debatable that Petitioner has failed to demonstrate by a substantial showing that he

was denied a constitutional right, I recommend that no certificate of appealability be issued.  See

28 U.S.C. § 2253(c); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).


Dated: March 18, 2014
       White Plains, New York

Respectfully Submitted,

Paul E. Davison
United States Magistrate Judge

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Kenneth M. Karas, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address. Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. Requests for extensions of time to file objections must be made to Judge Karas.

A copy of the foregoing Report and Recommendation has been sent to the following:

Earl Hayes, *pro se*
07-A-4800
Sing Sing Correctional Facility
354 Hunter Street
Ossining, New York 10562

60