UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EARL HAYES,

                         Petitioner,

      v.

WILLIAM A. LEE, Superintendent of the
Green Haven Correctional Facility,

                       Respondent.

Case No. 11-CV-1365 (KMK) (PED)

ORDER ADOPTING R&R

KENNETH M. KARAS, District Judge:

       Petitioner Earl Hayes ("Hayes"), proceeding pro se, brings a Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction for one count of scheme to defraud in the first degree, three counts of criminal possession of a forged instrument in the second degree, one count of identity theft in the second degree, and one count of criminal possession of stolen property in the third degree.  (Pet. for Writ of Habeas Corpus ("Pet.") ¶¶ 4–5 (Dkt. No. 1).)  Petitioner pled guilty to each of these counts.  (*Id.* ¶ 5.)

       On March 18, 2014, Magistrate Judge Paul E. Davison issued a Report and Recommendation ("R&R"), (R&R (Dkt. No. 39)), recommending that the Court deny the Petition in all respects.  Petitioner filed timely Objections to the R&R, which the Court has considered.  (Pet'r's Obj's to R&R ("Pet'r's Obj's") (Dkt. No. 42).)  For the reasons stated herein, the Court overrules Petitioner's Objections to the R&R, adopts the R&R in its entirety, and dismisses the Petition.

I.  BACKGROUND

A.  Factual Background

Although the Court assumes the Parties' general familiarity with the factual and procedural background of this case as set forth in the thorough R&R, the Court will briefly summarize the facts most salient to the Petition.[1]

On October 26, 2005, Petitioner was arrested by Detective Jason Gorr ("Gorr") in the parking lot of a Wal-Mart store in Thompson, New York.  (R&R 1–2.)  Petitioner had attempted to use a credit card registered to another individual to purchase a cell phone, later purchased a laptop computer and gift cards from the same store, and was found with a suspended license at a vehicle that contained credit cards and gift cards, the laptop Petitioner purchased, a second laptop, and certain documents.  (*Id.*)

Petitioner was indicted on January 11, 2006, and the next day, Petitioner, represented by counsel, entered a plea of not guilty.  (*Id.* at 2–4.)  On August 25, 2006, through counsel, Petitioner filed an omnibus motion seeking to dismiss certain counts of the indictment and sought discovery of certain digital videos of Petitioner in Wal-Mart.  (*Id.* at 5 (citing Resp't's Answer to Pet. for Writ of Habeas Corpus ("Resp't's Answer") Ex. J (Dkt. No. 21)).)  The trial court granted the Motion in part in that, among other rulings, it dismissed four counts of the indictment and ordered a pretrial hearing on whether probable cause existed for Petitioner's arrest.  (*Id.* (citing Resp't's Answer Ex. O).)

At the pretrial hearings held on December 21, 2006 and January 9, 2007, Gorr testified as follows:  On October 26, 2005, he received a phone call from a loss prevention employee at Wal-

_____

[1] Unless otherwise indicated, Petitioner has not objected to the factual background as articulated by Judge Davison, which the Court therefore adopts.

Mart, informing him that a customer used a credit card embossed with Petitioner's name, but which name read on the cash register computer as "Samuel Jablanski," to attempt to purchase a cell phone, which the customer later purchased using gift cards. (*Id.* at 5–6.)[2] Gorr went to the store, viewed the declined credit card receipt, and watched the surveillance footage of the incident. (*Id.* at 6.) Following Petitioner to his car, Gorr saw Petitioner put something in the vehicle's trunk and open the driver's door. (*Id.*) Gorr then identified himself, called another officer for backup, and asked for Petitioner's state identification card, at which point Petitioner showed Gorr his identification card and a MasterCard with his name on it. (*Id.*) After police ran Petitioner's identification card and learned that his license was suspended, Petitioner told Gorr that he was driven to the store by a friend named "Mark," whose last name Petitioner did not provide, and whom Wal-Mart employees unsuccessfully attempted to page. (*Id.* at 6–7.) Petitioner then called his fiancée on her phone, and she told Gorr that Petitioner had left the house by himself in her vehicle. (*Id.* at 7.) Gorr confirmed what Petitioner's fiancée had said by returning to the loss prevention office and reviewing the surveillance tapes, which showed an individual exiting the driver's side door of the vehicle wearing the a dark colored coat with a white sleeve or white stripe—the same clothing as Petitioner—but showed no one else leaving the car. (*Id.*) Gorr subsequently arrested Petitioner for driving with a suspended license and suspicion of possession of a forged instrument. (*Id.*) Upon being patted down, police discovered several other credit cards and gift cards on Petitioner's person. (*Id.*) Petitioner's fiancée later arrived at the scene and consented to a search of the vehicle, wherein police found two laptops.

---

[2] During Gorr's testimony, Gorr, counsel, the trial court, and Petitioner viewed surveillance footage from Wal-Mart on a laptop located at the bench. (R&R 7.)

(*Id.*)  Gorr denied that Petitioner said he wanted to leave before being arrested or that he ever assaulted Petitioner.  (*Id.*)[3]

After the hearing, Petitioner's counsel argued that Gorr's testimony was not credible because the surveillance footage did not show Petitioner driving into the parking lot, and there was no evidence indicating how Gorr knew Petitioner's name was embossed on the credit card used to make the cell phone purchase.  (*Id.* at 8.)  The trial court nonetheless ruled that probable cause existed for the arrest.  (*Id.* (citing Resp't's Answer Ex. U).)

On March 2, 2007, Petitioner pled guilty to one count of scheme to defraud in the first degree, three counts of criminal possession of a forged instrument in the second degree, one count of identity theft in the second degree, and one count of criminal possession of stolen property in the third degree, in exchange for a five and one-half to eleven year sentence.  (*Id.*) As part of his plea, Petitioner waived his right to appeal, confirmed he was satisfied with his attorney, confirmed he understood the terms of the plea bargain, admitted specifically what he did, and pled guilty.  (*Id.* at 8–9 (citing Resp't's Answer Exs. V–W).)  *See also Hayes v. County of Sullivan*, 853 F. Supp. 2d 400, 411 (S.D.N.Y. 2012) (recounting that, in the plea colloquy, Sullivan County Court judge Burton Ledina confirmed that Plaintiff understood the implications of his plea, including that he was forfeiting "his right to 'challenge the conduct of police officers in obtaining . . . evidence,'" "the right to appeal his conviction to a higher court," and the right to complaint about "any errors 'from the date of the crime involved right through the time of sentencing'").

---

[3] Petitioner's witness, Tressa Evans, testified that she went to Wal-Mart to shop on that day and was told Petitioner was not free to leave when she offered to give him a ride home. (R&R 8.)  Petitioner maintains he was not free to leave the scene.  (*See* Pet'r's Obj's 3.)

At a conference originally scheduled for sentencing on April 25, 2007, Petitioner, proceeding pro se, moved to withdraw his plea because of ineffective assistance of counsel, at which time Petitioner's counsel, with the consent of Petitioner and the trial court, withdrew. (*Id.* at 9.) Petitioner subsequently retained new counsel, who submitted a reply brief in support of Petitioner's motion to withdraw the plea. (*Id.*) The court denied Petitioner's motion on August 17, 2007. (*Id.* at 9–10.)[4] Petitioner was subsequently sentenced to an aggregate term of five and one-half to eleven years imprisonment. (*Id.* at 10.)

B.  Procedural Background

Since his sentencing, Petitioner has filed multiple state and federal court appeals and petitions. The R&R comprehensively recounts Petitioner's filings and the claims raised therein, which the Court will briefly review. (*Id.* at 10–20.) On August 29, 2009, Petitioner, represented by new counsel, filed his first direct appeal with the New York Supreme Court, Appellate Division, arguing that the trial court abused its discretion in denying his motion to withdraw his plea without an evidentiary hearing. (*Id.* at 10 (citing Resp't's Answer Ex. RRR).) Petitioner raised additional grounds, pro se, in two supplemental briefs, including several reasons why he believed he had received ineffective assistance of trial counsel. (*Id.* at 10–11.) On March 4, 2010 the Appellate Division affirmed the judgment of conviction, and on May 21, 2010 it denied Petitioner's subsequent application for reargument. (*Id.* at 11–12.) Petitioner requested leave to appeal to the New York Court of Appeals and for reargument/reconsideration, which the Court of Appeals denied on September 3 and November 30, 2010, respectively. (*Id.* at 12.)

---

[4] In the interim, the trial court denied Petitioner's request to subpoena records maintained by local law enforcement. (R&R 10.)

Petitioner has sought collateral relief in state court.  First, on September 18, 2006, while his omnibus motion was pending, Petitioner, proceeding pro se, filed for habeas corpus relief in the Appellate Division, arguing that the trial court failed to enter an order on his application for bail.  (*Id.* at 5–6 n.12; Resp't's Answer Ex. L.)[5]  Second, prior to sentencing, on August 4, 2007, Petitioner, proceeding pro se, filed for habeas corpus in the Appellate Division, arguing that he was being detained in violation of his right to be free from unreasonable search and seizure, and that he had received ineffective assistance of counsel.  (*Id.* at 12 (citing Resp't's Answer Exs. FF, JJ).)  The Appellate Division denied the application on October 18, 2007.  (*Id.* (citing Resp't's Answer Ex. LL).)  Third, on July 24, 2009, Petitioner, proceeding pro se, filed for habeas corpus relief in the Appellate Division, arguing that he was confined in violation of *People v. Pelchat*, 62 N.Y.2d 97 (1984), because the prosecutor had knowingly allowed false testimony to be introduced at the suppression hearing.  (*Id.* at 12–13 (citing Resp't's Answer Ex. NNN).)  The Appellate Division denied the application on October 2, 2009.  (*Id.* at 13 (citing Resp't's Answer Ex. VVV).)

Petitioner then moved to vacate his conviction pursuant to New York Criminal Procedure Law §§ 440.10(1)(b), (c), (d), (f), and (h).  Proceeding pro se, Petitioner first moved to vacate on October 16, 2007, arguing ineffective assistance of counsel, that the prosecutor engaged in duress, misrepresentation, and fraud, and judicial bias.  (*Id.* at 13–14 (citing Resp't's Answer Exs. KK, NN–QQ).)  The trial court denied Petitioner's motion and request for reconsideration of his motion on January 9 and April 2, 2008, respectively, and the Appellate Division denied leave to appeal on May 27, 2008.  (*Id.* at 14 (citing Resp't's Answer Exs. RR–SS, VV, XX, ZZ).)

---

[5] The record does not indicate the ultimate disposition of this first petition, nor is its disposition ultimately relevant to the instant Action.

On December 8, 2008, Petitioner, proceeding pro se, once again moved to vacate, arguing that the prosecutor knowing permitted false testimony before the grand jury and at the suppression hearing, and that his counsel was ineffective for allowing it.  (*Id.* (citing Resp't's Answer Exs. CCC, EEE).)  The trial court denied the motion on April 8, 2009, and the Appellate Division denied leave to appeal on June 19, 2009.  (*Id.* (citing Resp't's Answer Exs. HHH, JJJ, LLL).) On March 2, 2011, Petitioner, proceeding pro se, moved for a third time to vacate, arguing that the prosecutor failed to produce two pages of Gorr's notes.  (*Id.* at 15 (citing Resp't's Answer Exs. YYYY, BBBBB–CCCCC).)  The trial court denied the motion and request for reargument/reconsideration on April 6 and May 12, 2011, respectively.  (*Id.* (citing Resp't's Answer Exs. DDDDD, LLLLL).)  The Appellate Division denied leave to appeal on June 3, 2011, and Petitioner subsequently sought leave to appeal to the New York Court of Appeals.  (*Id.* at 16 (citing Resp't's Answer Exs. NNNNN, OOOOO).)[6]

---

[6] The record does not reflect the outcome of Petitioner's application in the Court of Appeals.  Petitioner, proceeding pro se, also moved on July 31, 2009, to set aside a portion of his sentence pursuant to N.Y. Crim. Proc. Law § 440.20, arguing that his consecutive sentence was illegal.  (R&R 15 (citing Resp't's Answer Exs. MMM, PPP, UUU).)  The trial court denied the Motion on November 6, 2009.  (*Id.* (citing Resp't's Answer Ex. WWW).)

On September 29, 2010, proceeding pro se, Petitioner sought a writ of error coram nobis from the Appellate Division, arguing that appellate counsel was ineffective for failing to argue that trial counsel was ineffective.  (*Id.* at 16 (citing Resp't's Answer Exs. JJJJ, LLLL, OOOO, QQQQ, SSSS).)  The Appellate Division denied Petitioner's application on November 9, 2010, and Petitioner did not seek leave to appeal.  (*Id.* (citing Resp't's Ex. TTTT); *see also* Ltr. from Katy M Schlichtman, Esq., to Court (Mar. 17, 2014) (Dkt. No. 38) (confirming that no appeal was sought).)  On April 30, 2013, Petitioner sought a second writ of coram nobis, arguing that appellate counsel was ineffective for failing to argue judicial bias.  (*See* Ltr. from Petitioner to Court (Jan. 25, 2014) ("Pet'r's Jan. 25 Ltr.") (Dkt. No. 34).)  The Appellate Division denied Petitioner's application, and the Court of Appeals denied leave to appeal on December 20, 2013.[7] (*Id.* at unnumbered 11, 58.)

Petitioner timely filed the instant Petition on February 15, 2011, as amended on April 19, 2011, (*see* Pet.; Dkt. Nos. 15, 17–19), within the one-year statute of limitations period prescribed by 28 U.S.C. § 2244(d)(1)(A).  Petitioner asserts several grounds for relief, which Judge Davison classified into seven categories: (1) failure of the prosecutor to correct Garr's false testimony, (2) the trial court's determination to review video evidence on a laptop at the bench, (3) ineffective assistance of trial counsel, (4) ineffective assistance of appellate counsel, (5) *Brady* violations, (6) spoliation of evidence by the prosecution, and (7) other legal errors made by the trial court. (R&R 17–20.)  Respondent filed an Answer on June 17, 2011, (*see* Resp't's Answer), to which Petitioner filed a response on July 5, 2011, (Dkt. No. 27), together with a Declaration of a Linwood Hayes, Petitioner's mother, (Dkt. No 28).  Petitioner filed a supplemental letter,

---

[7] The record does not disclose exactly when the Appellate Division denied Petitioner's second application for a writ of error coram nobis.

pertaining to exhaustion of an ineffective assistance of appellate counsel claim, on January 29, 2014.  (*See* Pet'r's Jan. 25 Ltr. at unnumbered 1.)

## II.  DISCUSSION

### A.  Standard of Review

A district court reviewing an R&R addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Haas v. Verizon N.Y., Inc*., No. 13-CV-8130, 2015 WL 5785023, at *2 (S.D.N.Y. Sept. 30, 2015) (same).  Under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), parties may submit objections to the magistrate judge's R&R.  These objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

Where a party submits timely objections to an R&R, the district court reviews de novo the parts of the R&R to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Haas*, 2015 WL 5785023, at *2.  The district court "may adopt those portions of the [R&R] to which no specific written objection is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *See Nordahl v. Rivera*, No. 08-CV-5565, 2013 WL 1187478, at *3 (S.D.N.Y. Mar. 21, 2013) (internal quotation marks omitted).

"Habeas review is an extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and a petitioner seeking a writ of habeas corpus must comply with the strict requirements of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), *see* 28 U.S.C. § 2254. First, a federal habeas petition must be timely, i.e. submitted within AEDPA's one-year statute of limitations.  *Id.* § 2254(d).  The limitations period is subject to equitable tolling, which is

warranted only when a petitioner has shown "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances . . . prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

Second, a petitioner must have exhausted his or her federal constitutional claims in state court. *See* 28 U.S.C. § 2254(b)(1)(A); *see also Sepulveda v. New York*, No. 08-CV-5284, 2013 WL 1248379, at *2 (S.D.N.Y. Mar. 26, 2013) ("[U]nexhausted claims generally may not be considered on habeas review."). To satisfy the exhaustion requirement, a petitioner must have presented to the state court "all of the essential factual allegations" and "essentially the same legal doctrine" asserted in the federal habeas petition. *Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186, 191–92 (2d Cir. 1982); *see also Chellel v. Miller*, No. 04-CV-1285, 2008 WL 3930556, at *4 (E.D.N.Y. Aug. 21, 2008) ("A petitioner must present the substance of a habeas corpus claim to the state court, including its federal constitutional dimension, before a federal habeas court can consider it."). In addition, "[a] habeas petitioner satisfies the exhaustion requirement if he [or she] has presented his [or her] claims for post-conviction relief to the highest state court." *Haddock v. Second App. Ct.*, No. 10-CV-3442, 2013 WL 3640150, at *4 (S.D.N.Y. July 15, 2013); *see also Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005) (noting that exhaustion requires habeas relief to be presented to the highest state court).

Third, a federal court "will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment." *Downs v. Lape*, 657 F.3d 97, 101 (2d Cir. 2011) (internal quotation marks omitted); *see also Lisojo v. Rock*, No. 09-CV-7928, 2010 WL 1223086, at *21 (S.D.N.Y. Mar. 31, 2010) (noting that preclusion of federal review is proper when "the last state court to render judgment . . . clearly and expressly state[s] . . . that its

judgment rest[ed] on a state procedural bar.") (internal quotation marks omitted), *adopted by* 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010).  In "exceptional cases," the "exorbitant application of a generally sound [state procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002).  "To determine whether [a particular case] involves an exorbitant misapplication of a state rule, [courts] look to see if the state's application serves a legitimate state interest." *Downs*, 657 F.3d at 102.  To this end, the Second Circuit has identified several guideposts for determining the propriety of application of a state procedural rule in the context of a particular case:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision;
>
> (2) whether state [case law] indicated that compliance with the rule was demanded in the specific circumstances presented;
>
> (3) whether petitioner had substantially complied with the rule given the realities of trial, and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotations marks omitted).  In addition, "[the Court will not] consider claims that have not been exhausted by fair presentation to the state courts, unless the petitioner 'can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Acosta v. Artuz*, 575 F.3d 177, 184 (2d Cir. 2009) (citations omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

　　Once these three procedural hurdles are crossed, AEDPA provides that a habeas petitioner is entitled to habeas corpus relief only if he or she can show that "the state court unreasonably applied law as established by the Supreme Court in ruling on [the] petitioner's

claim, or made a decision that was contrary to it." *Cousin v. Bennett*, 511 F.3d 334, 337 (2d Cir. 2008) (internal quotation marks omitted).  "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in [the Second] Circuit that the objectively unreasonable standard of § 2254(d)(1) means that [the] petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (alterations and internal quotation marks omitted)); *see also Lisojo*, 2010 WL 1223086, at *18 (noting that federal courts pay "the state court's adjudication a high degree of deference [and that] [i]t is the petitioner's burden to demonstrate that the state court applied the relevant clearly established law to the record in an unreasonable manner" (internal quotation marks omitted)).  Moreover, a state court's determination of factual issues is presumed correct, and the petitioner has "the burden of rebutting the presumption [of correctness] by clear and convincing evidence." *Richard S. v. Carpinello*, 589 F.3d 75, 81 (2d Cir. 2009).

Because Petitioner is appearing before the Court pro se, the Court will consider all of Petitioner's submissions in keeping with the special solicitude afforded to pro se litigants.  *See Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) ("[A] court is ordinarily obligated to afford a special solicitude to pro se litigants" because such litigants "generally lack[] both legal training and experience" (italics omitted)).  However, the Court's solicitude does not "exempt a party from compliance with relevant rules of procedural and substantive law." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks omitted).

B.  Analysis

While Petitioner does not clearly identify all of his objections, the Court, in construing his allegations liberally, considers Petitioner to have raised the following objections to Judge Davison's R&R:

1)  Objections Relating to Gorr's Testimony

    a.  Judge Davison "mischaracterize[ed] the record" and drew a false inference when he construed Gorr's testimony as confirming that Gorr had probable cause to believe that Petitioner drove to Wal-Mart from his fiancée's house, (Pet'r's Obj's 1–2);

    b.  Judge Davison erroneously "conclud[ed] that there is no evidence to suggest that Gorr in any way prevented [Petitioner] from leaving [the scene] before probable cause for [Petitioner's] arrest was established," ignoring the testimony of Petitioner's witness, Teresa Evans, (*id.* at 2–4);

2)  Objections Relating to Judicial Bias

    a.  Judge Davison erroneously found that Petitioner could not establish ineffective assistance of appellate counsel because Petitioner argued the relevant claims "[him]self on direct appeal in [his] supplemental brief," (*id.* at 5);

    b.  Judge Davison incorrectly refused to review the record of Petitioner's second error coram nobis application and consider the judicial bias claim made therein, (*id.* at 7–9; *see also* Pet'r's Jan. 25 Ltr.);

3)  Objections Relating to Ineffective Assistance of Trial Counsel

    a.  Judge Davison "fail[ed] to recognize" that Petitioner did not have a reasonable opportunity to contend that trial counsel was ineffective in failing to challenge the search of his home, (Pet'r's Obj's at 10–12);

    b.  Judge Davison "fail[ed] to recognize" that Petitioner did not receive "adequate review" of his ineffective assistance of trial counsel arguments when the Appellate Division refused to consolidate Petitioner's appeals and reviewed only a limited record, (*id.* at 13–14);

    c.  Judge Davison erroneously found that Petitioner could not satisfy the "prejudice" prong of the *Strickland* test, (*id.* at 14–15).

### 1.  Objections Pertaining to Claims that Precede Guilty Plea

"A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." *Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation omitted); *Whitehead v. Senkowski*, 943 F.2d 230, 233 (2d Cir. 1991) ("Generally, a knowing and voluntary guilty plea precludes habeas corpus review of claims relating to constitutional rights at issue prior to entry of the plea."); *Jacks v. Lempke*, No. 09-CV-8768, 2012 WL 3099069, at *11 (S.D.N.Y. July 24, 2012), *adopted by* 2012 WL 3930098 (S.D.N.Y. Sept. 10, 2012) (same).  Indeed, "a guilty plea . . . conclusively resolves the question of factual guilt supporting the conviction, thereby rendering any antecedent constitutional violation bearing on factual guilt a non-issue." *United States v. Gregg*, 463 F.3d 160, 164 (2d Cir. 2006); *see also Wyatt v. United States*, No. 10-CV-5264, 2015 WL 1514385, at *5 (E.D.N.Y. Mar. 31, 2015).  Accordingly, a petitioner "may only attack the voluntary and intelligent character of the guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267

(1973); *see also United States v. Torres,* 129 F.3d 710, 715–16 (2d Cir. 1997) (same); *New York ex rel. Turner ex rel. Connors v. Dist. Att'y of N.Y. Cty.*, No. 12-CV-3355, 2015 WL 4199135, at *13 (S.D.N.Y. July 10, 2015) (same).

The majority of Petitioner's alleged grounds for habeas relief refer to conduct and events that occurred prior to the entry of his guilty plea.  (*See* R&R 28.)  The same can be said about many of Petitioner's Objections.  Accordingly, the only way that Petitioner may still press these claims is if they implicate whether Petitioner's plea was knowing or voluntary.[8]

Petitioner contends that absent the constitutional infirmities he identifies, he would have enjoyed better plea negotiation leverage.  (*See* Pet'r's Obj's 14–15).  Certainly, if a petitioner were to challenge his "attorney's *advice* about that bargaining position," the claim would pertain to voluntariness; otherwise, though, "a purported failure to enhance [a] defendant's case" is immaterial.  *Parisi*, 529 F.3d at 138–39; *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (noting that the *Strickland* prejudice inquiry in a challenge to a plea is limited to "whether the [alleged] error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial[,] [which] depend[s] on the likelihood that" the error "*would have led counsel to change his recommendation as to the plea*"); *Tollett*, 411 U.S. at 267 ("If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not within the range of competence demanded of attorneys in criminal cases." (internal quotation marks omitted)).  Indeed, the Second Circuit has made clear that a petitioner's pre-plea bargaining position has no bearing on

---

[8] Petitioner does argue, in his Objections, that his ineffective assistance of counsel arguments were preserved because he moved to withdraw his guilty plea and vacate his conviction before he was sentenced.  (*See* Pet'r's Obj's 14.)  As discussed below, however, because Petitioner does not challenge trial counsel's advice regarding the plea, such that the voluntariness of his plea is implicated, Petitioner's ineffective assistance of counsel claims do not survive.

15

the voluntariness of a plea.  *See Parisi*, 529 F.3d at 138 (rejecting a petitioner's claim "that an effective lawyer would have changed [the petitioner's] bargaining position pre-plea" because it "would have [the] [c]ourt turn its gaze away from the plea process and toward the multitude of ways in which pre-plea events might reduce the strength of the defense and worsen the defendant's bargaining power"); *see also Grafton v. United States*, No. 09-CV-1551, 2011 WL 4793162, at *3 (E.D.N.Y. Aug. 24, 2011) (dismissing a challenge to plea premised in part on the claim that "a more thorough investigation by . . . trial counsel might have changed [the petitioner's] 'strategic bargaining position' prior to his plea").[9]  Accordingly, and based on the plea colloquy reflected in the record, (*see* Resp't's Answer Ex. V), the Court adopts Judge Davison's finding that Petitioner's plea was knowing and voluntary.

Because Petitioner's plea was knowing and voluntary, Petitioner cannot assert pre-plea grounds for habeas relief, and the Court therefore adopts Judge Davison's recommendation that it deny those claims, overruling the relevant objections.  These include those claims to which objections 1(a) and 1(b) refer, namely those pertaining to supposed constitutional infirmities at the suppression hearing, *see Torres*, 129 F.3d at 715 (declining to "address [the petitioner's] argument that his counsel was constitutionally ineffective by failing to call certain witnesses at a pretrial suppression hearing" because the petitioner could only challenge whether his guilty plea was "voluntary and intelligent"); *Wyatt*, 2015 WL 1514385, at *5 ("Petitioner's guilty plea

---

[9] The Court recognizes that, in previous briefing, and perhaps by implication in Petitioner's Objections, Petitioner contends that he would have insisted on going to trial had he "not been duped and misled." (R&R 44; *see also* Pet'r's Obj's 14–15.)  However, the ineffectiveness to which Petitioner referred relates to Petitioner's failed suppression motion, as opposed to any of the advice that Petitioner received in connection with his guilty plea.  (*See* Pet. Addendum 2–3.)  Therefore, it does not implicate the voluntariness of the plea.  *See Sullivan v. Goord*, No. 05-CV-6060, 2007 WL 2746900, at *4 (W.D.N.Y. Sept. 19, 2007) (rejecting ineffective assistance claims "because of the substance of those claims do not relate to the voluntariness of [the petitioner's] plea or the advice he received with regard to pleading guilty").

waived his claims that his statement during his interrogation was coerced and that he actually is innocent, because they are associated with events that occurred prior to its entry and he does not connect these claims to the voluntariness of his plea."); *Hill v. United States*, Nos. 13-CV-1107, 11-CR-145, 2014 WL 104565, at *7 (S.D.N.Y. Jan. 7, 2014) (finding waived claims that the petitioner's attorney failed to "investigate certain evidence and fail[ed] to move to suppress evidence" because they did not affect "the voluntariness of [his] plea"), and those claims to which objections (3)(a) through 3(c) refer, which concern, at root, ineffective assistance of trial counsel prior to the plea*, see Aladino v. United States*, No. 09-CV-926, 2012 WL 3531910, at *10 (E.D.N.Y. Aug. 15, 2012) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. . . . This bar applies as well to ineffective assistance claims relating to events prior to the guilty plea." (internal quotation marks omitted)); *Burwell v. Perez*, No. 10-CV-2560, 2012 WL 1596685, at *6 (S.D.N.Y. May 3, 2012) ("Because [the petitioner's] guilty plea was voluntary and intelligent, [the petitioner's] ineffective assistance claim, which concerns only his counsel's pre-plea actions (or failures to act), fails to state a violation of his constitutional rights that this [c]ourt can consider."), *adopted by* 2012 WL 1596685, at *6 (S.D.N.Y. June 13, 2012); *Vasquez v. Parrott*, 397 F. Supp. 2d 452, 463 (S.D.N.Y. 2005) ("[A]s long [as] a guilty plea was made knowingly and voluntarily, any claims of ineffective assistance of counsel relating to events prior to the guilty plea cannot be asserted.").[10]

---

[10] Judge Davison likewise found that all of the grounds for relief raised in the Petition, except those that pertained to ineffective assistance of appellate counsel and errors made by the trial court after the guilty plea, were barred by his guilty plea.  (*See* R&R 28.)

Moreover, as Judge Davison aptly points out, the gravamen of Petitioner's claim appears to concern alleged Fourth Amendment violations that Gorr committed in the Wal-Mart parking lot.  (*See id.* at 50 n.36.)  As Judge Davison explained, however, (*see id.* 50–52 n.36), and to which Petitioner did not object, "where the State has provided an opportunity for full and fair

litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the grounds that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976); *see also Young v. Conway*, 715 F.3d 79, 92 (2d Cir. 2013) ("Fourth Amendment claims are not reviewable by the federal courts when raised in a petition brought under § 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate the claim in state court." (emphasis and internal quotation marks omitted)); *Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a basis for federal habeas relief . . . . [and is] incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim . . . ."). Fourth Amendment claims are only cognizable on habeas review, then, if the state "provided no corrective procedures at all to address fourth amendment violations," or the defendant was "precluded from using that mechanism because of an unconscionable breakdown in the underlying process," *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *see also Pena v. State of New York*, No. 04-CV-9499, 2008 WL 4067339, at *9 (S.D.N.Y. Aug. 26, 2008) (same), which constitutes more than a "procedural trivialit[y]," but rather something that "calls into serious question when a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." *Munford v. Graham*, No. 09-CV-7899, 2010 WL 644435, at *16 (S.D.N.Y. Feb. 24, 2010), *adopted by* 2010 WL 2720395 (S.D.N.Y. June 29, 2010), *aff'd*, 467 F. App'x 18 (2d Cir. 2012).

Petitioner was afforded a constitutionally adequate process under N.Y. Crim. Proc. Law § 710.10 *et seq.*, and he has failed to allege an unconscionable breakdown in the stages of review. *See Hill v. Lee*, No. 11-CV-640, 2013 WL 3227641, at *4 (S.D.N.Y. Jan. 25, 2013) (finding this law to be constitutionally adequate, and denying a suppression-based claim for habeas relief because the petitioner "neither allege[d] nor demonstrate[d] an 'unconscionable breakdown' in the state process"); *McClelland v. Kirkpatrick*, 778 F. Supp. 2d 316, 331 (W.D.N.Y. Apr. 21. 2011) (explaining that "mere satisfaction or disagreement with the outcome of a suppression motion is not sufficient to establish an 'unconscionable breakdown,'" and finding that the "trial court's allegedly erroneous fact-finding, incorrect application of the law, and refusal to consider the pertinent issues during [a] suppression hearing" did not constitute such a breakdown); *Munford*, 2010 WL 644435, at *17 (collecting cases and noting that even where "the suppression court failed to make a reasoned inquiry into [the] defense counsel's objections about the limits on cross-examination and the exclusion of [a] video," there was no unconscionable breakdown, in part because the petitioner "had a full and fair opportunity to litigate his Fourth Amendment claim on direct appeal"). Indeed, even Petitioner's claim of ineffective assistance of counsel in connection with his Fourth Amendment claim, "as a matter of law," cannot "constitute an unconscionable breakdown." *Irizarry v. Ercole*, No. 08-CV-5884, 2013 WL 139638, at *5 n.4 (S.D.N.Y. Jan. 11, 2013). Accordingly, there is no relief available to Petitioner on Fourth Amendment grounds.

2.  Objections to Claims that Post-Date Guilty Plea

Only two of Petitioner's objections refer to claims that are not clearly foreclosed by Petitioner's guilty plea.  Those are objection 2(a), which refers to Petitioner's ineffective assistance of appellate counsel claims, and 2(b), which refers to Petitioner's ineffective assistance of appellate counsel claim based on judicial bias, which Judge Davison declined to consider.

a.  Ineffective Assistance of Appellate Counsel

In his Petition, Petitioner alleged that his appellate counsel was ineffective for failing to include a number of arguments in his brief.  (Pet. Addendum 15–16.)[11]  In evaluating these claims, Judge Davison first concluded that because Petitioner failed to seek leave to appeal the Appellate Division's denial of his ineffective assistance of appellate counsel claims to the New York Court of Appeals, his claims were unexhausted.  (R&R 52–53 & n.37 (citing, inter alia, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (explaining that a failure to present a claim "in each appropriate state court . . . including a state supreme court with powers of discretionary review" renders a claim unexhausted for purposes of federal habeas review); *Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) (same))).  Judge Davison then explained that while it is not clear if Petitioner can still exhaust his claims by filing a second coram nobis petition, it ultimately does not affect the Petition because Petitioner is either (a) not able to file a second coram nobis petition, rendering his claims exhausted but procedurally barred, (*id.* at 53–54 (citing, inter alia, *Reyes v. Keane*, 118 F.3d 136, 139 (2d Cir. 1997)) or (b) able to file a second coram nobis petition, but his claims are so meritless that there is no reason to stay the proceedings to allow Petitioner to

---

[11] The Addendum to the Petition is separately paginated, and so the Court will so indicate when it cites to the Addendum.

exhaust them, (*id.* at 55 (citing, inter alia, 28 U.S.C. § 2254(b)(2); *Rhines v. Webber*, 544 U.S. 269, 277–78 (2005); *Zarvela v. Artuz*, 254 F.3d 374, 378–82 (2d Cir. 2001))).

The Court need not determine whether exhaustion remains possible, because the Court agrees that the claims at issue are plainly meritless.  Appellate counsel "does not have a duty to advance every nonfrivolous argument."  *Ramchair v. Conway*, 601 F.3d 66, 73 (2d Cir. 2010) (internal quotation marks omitted); *see also Jones v. Barnes*, 463 U.S. 745, 751–52 (1983) (explaining "the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues"); *Person v. Ercole*, No. 08-CV-7532, 2015 WL 4393070, at *26 (S.D.N.Y. July 16, 2015) (same).  Accordingly, failure of appellate counsel to raise an argument only constitutes ineffective assistance if the petitioner "shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker."  *Ramchair*, 601 F.3d at 73 (internal quotation marks omitted); *see also Person*, 2015 WL 4393070, at *27 (same).

With this standard in mind, Judge Davison is correct that the one issue appellate counsel raised, namely that the trial court erred in not holding an evidentiary hearing on Petitioner's motion to withdraw his guilty plea, was not clearly or significantly weaker than any other claims counsel could have raised.  (*See* R&R 55–56.)  While Petitioner correctly points out in his Objections that judicial bias is an important "structural error," (Pet'r's Obj's 6), the guilty plea was a gateway issue, in that its existence foreclosed relief on essentially all pre-plea constitutional errors, including all of the arguments Petitioner alleges appellate counsel should have raised, (*see* Pet. Addendum 15–16.)  Accordingly, it was reasonable for appellate counsel to focus on reinstating Petitioner's motion to withdraw the plea.  *See Jones,* 463 U.S. at 751–52 (noting "the importance of . . . focusing on one central issue if possible" on appeal); *see also*

*Liggan v. Senkowski*, No. 11-CV-1951, 2014 WL 5315029, at *12 (S.D.N.Y. Oct. 17, 2014)

("Because a claim that trial counsel was ineffective would have been without merit, [the

petitioner's] appellate counsel could not have been ineffective for deciding not to raise such a

claim."); *Fisher v. Superintendent*, No. 12-CV-6703, 2014 WL 128015, at *22 (S.D.N.Y. Jan.

14, 2014) (finding that appellate counsel had no duty to raise a claim concerning an event that

occurred prior to the entry of a constitutionally valid guilty plea because the plea rendered the

claim meritless).[12]   Judge Davison therefore correctly applied the first prong of the *Strickland*

test in concluding that Petitioner has not demonstrated ineffective assistance of appellate

counsel, and Petitioner's objection therefore is overruled.  *See Strouse v. Leonardo,* 928 F.2d

548, 556 (2d Cir. 1991) (concluding that it is unnecessary to analyze the second prong of the

*Strickland* test when a petitioner fails to meet the first prong because a petitioner must satisfy

both prongs).[13]

### b.  Second Error Coram Nobis Petition

In a letter to the Court dated January 25, 2014, Petitioner included court documents

indicating that he had exhausted, by virtue of filing and appealing the denial of a second coram

---

[12] The Court recognizes that this claim, too, was likely to fail, *see Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003) (affirming district court's rejection of habeas claim because "[b]oth federal and state precedent have established that a defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea" (internal quotation marks omitted)), but it was Petitioner's best shot at undoing his conviction.

[13] The crux of Petitioner's objection seems to be rooted in the prejudice prong of the *Strickland* analysis, as Petitioner takes issue with Judge Davison's determination that Petitioner could not prove prejudice because he raised the arguments at issue in his supplemental appellate brief.  (*See* R&R 56; Pet'r's Obj's 5.)  While, as noted above, the Court need not reach the issue, the case law supports Judge Davison's determination.  *See, e.g., Liggan v. Senkowski*, No. 11-CV-1951, 2013 WL 3853401, at *32 (S.D.N.Y. July 26, 2013) (finding that there cannot be ineffective assistance of counsel for failure to raise a claim when that claim was raised in a pro se supplemental submission), *adopted in relevant part by* 2014 WL 5315029 (S.D.N.Y. Oct. 17, 2014).

nobis Petition, an additional ineffective assistance of appellate counsel claim, namely that appellate counsel was ineffective when he failed to argue judicial bias by the trial court.  (*See* Pet'r's Jan. 25 Ltr. at unnumbered 1.)  In a footnote, Judge Davison acknowledged that Petitioner "submitted more than one hundred pages of additional material," but he refused to consider the submission because of the "extraordinary passage of time since the habeas petition was fully submitted, and . . . the absence of any explicit request that the petition be amended to add . . . new claims."  (R&R 56–57 n.39.)

Assuming, without deciding, that it was improper for Judge Davison to not consider Petitioner's new claim, the Court nonetheless agrees with Judge Davison that the claim is without merit, albeit on different grounds.  Judge Davison concluded that, given Petitioner's judicial bias claim has already been denied on the merits as part of his first § 440.10 motion, Petitioner failed to establish that "had appellate counsel raised the claim on direct appeal, the result of the appeal would have been different."  (*Id.*)  While Petitioner's judicial bias argument appears to rest only on Petitioner's disagreement with several rulings Judge Ledina made that were unfavorable to Petitioner, (*see* Pet'r's Jan. 25 Ltr. at unnumbered 35–57), and a conclusory assertion that "had appellate counsel reviewed the video" of the incident, "she would have recognized that the trial court manifested bias when it permitted Gorr to give false testimony . . . ," (Pet'r's Obj's 6–7), such that the claim appears to be without merit, *see Huminski v. State*, No. 14-CV-1390, 2015 WL 1825966, at *2 (D. Conn. Apr. 22, 2015) (noting that the plaintiff's "conclusory allegations do not implicate [the] [c]ourt's impartiality . . . because the only support . . . is that the [c]ourt ruled against him, and it is well-established that claims of judicial bias must be based on extrajudicial matters" (footnote, citation, and internal quotation marks omitted)); *Vitranschart, Inc. v. Levy,* No. 00-CV-3618, 2003 WL 22137134 at *2 (S.D.N.Y. Sept. 15, 2003)

("[M]ere bald speculation of bias and prejudice do not suffice to show partiality."); *Francolino v. Kuhlman,* 224 F. Supp. 2d 615, 641 (S.D.N.Y. 2002) (rejecting judicial bias claim where the petitioner "never explain[ed] how [trial judge's] alleged bias influenced her rulings, or even directly argue[d] that [the judge's] rulings were unsound," and noting that "[i]n the absence of any specificity or legal analysis, this [c]ourt cannot entertain [the petitioner's] claim"), the Court need not reach the merits of the judicial bias claim itself.  Rather, as outlined above, appellate counsel was not obligated to raise all nonfrivolous arguments, and appellate counsel's decision to focus on Petitioner's motion to vacate the plea made strategic sense given the impact of the guilty plea on Petitioner's other grounds for relief.  Petitioner's objection is therefore overruled because his claim of ineffective assistance of appellate counsel is without merit.

### 3.  Petitioner's Other Claims

Having overruled each of Petitioner's objections, the Court reviews the remainder of Judge Davison's R&R for clear error.  *See Olivares v. Ercole*, 975 F. Supp. 2d 345, 355–56 (S.D.N.Y. 2013).  The Court has reviewed the Petitioner's papers and the R&R, and finding no substantive error, clear or otherwise, adopts the R&R's findings with regard to Petitioner's other claims.[14]

### III.  CONCLUSION

The Court hereby adopts Judge Davison's R&R.  Petitioner's writ of habeas corpus is accordingly dismissed with prejudice.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y.S.*

---

[14] In other words, the Court has reviewed all of Plaintiff's claims and finds that even on a de novo review, they lack merit.

*Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to

28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in

good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's

good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda*

*Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and

finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that

it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent

and to close the case.

SO ORDERED.

Dated: October 13, 2015
       White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE